Laura C. ARMSTRONG, Appellant,

v.

Charles E. ARMSTRONG, Appellee.

No. 8414.

Court of Civil Appeals of Texas,
Beaumont.

May 15, 1980.

Rehearing Denied June 5, 1980.

R. Leon Pettis, Beaumont, for appellant.

Jane K. Swanson, Beaumont, for appellee.

KEITH, Justice.

The mother of twin boys, now less than five years of age, appeals from a default judgment which modified a divorce decree by changing the managing conservatorship from the mother to the father. She learned of the change in time to file an original motion for new trial which was timely amended but overruled. The appeal is based upon two points of error: (1) there is no evidence to support the finding of a change in conditions authorizing said modification; and (2) the evidence is factually insufficient to sustain such modification.

Before entering upon a discussion of the pleadings and the evidence introduced, we must first dispose of a preliminary issue raised by the father who invokes the rule that where the judgment is by default, all well-pleaded allegations of the moving party are taken as admitted. See *4 R. McDonald, Texas Civil Practice § 17.23.3, at 119 (1971 Rev. Vol.),* for a general statement of the rule.

We recognize the application of the rule to the ordinary civil action between litigants involving money or property. We are unwilling to follow, blindly, such rule in a case involving the care, custody, and control of children of tender years. The Legislature was unusually positive in fixing the burden of one seeking to modify an order relating to children. *Tex. Family Code Ann. § 14.08(c) (Supp. 1980)* reads:

"(c) After a hearing, the court may modify an order or portion of a decree that:

(1) designates a managing conservator if the circumstances of the child or parent have so materially and substantially changed since the entry of the order or decree to be modified that the retention of the present managing conservator would be injurious to the welfare of the child and that the appointment of the new managing conservator would be a positive improvement for the child . . . ."

In the *Matter of Marriage of Stockett,* 570 S.W.2d 151, 154 (Tex.Civ.App.—Amarillo 1978, no writ), the court, citing the foregoing statute, held:

"These changes must be such that the retention of the present managing conservator would be injurious to the child's welfare, *and* the appointment of a new managing conservator would be a positive improvement for the child." (emphasis supplied)

*Tex. Family Code Ann. § 14.07(a) (1975)* is unusually emphatic in speaking to the change in custodial rights of parties:

"(a) The best interest of the child shall always be the primary consideration of the court in determining questions of managing conservatorship, possession, and support of and access to the child."

The statute and the decisions place a heavy burden upon the party seeking to modify the decree. See, e.g., *Radtke v. Radtke,* 521 S.W.2d 749, 751 (Tex.Civ.App.—Houston [14th Dist.] 1975, no writ); *Becerra v. Garibaldo,* 526 S.W.2d 780, 784 (Tex.Civ.App.—Corpus Christi 1975, writ ref'd n.r.e.); *Hanna v. Turner,* 556 S.W.2d 866, 868 (Tex.Civ. App.—Corpus Christi 1977, no writ).

Indeed, it has been held that until the moving party has discharged the onerous burden imposed upon him by the statute quoted earlier, the trial court must deny the motion to change the custody.[1] This is

1. For a discussion of these heavy burdens, see *O. v. P.,* 560 S.W.2d 122, 126 (Tex.Civ.App.— Fort Worth 1977, no writ), quoted in *D.W.D.,* infra.

termed a "threshold inquiry." See *D.W.D. v. R.D.P.*, 571 S.W.2d 224, 226 (Tex.Civ.App.—Fort Worth 1978, writ ref'd n.r.e.).

In approaching our own preliminary question, we take two sentences from a recent case, *Graham v. Graham*, 584 S.W.2d 938, 940 (Tex.Civ.App.—Waco 1979, no writ):

> "The paramount concern of courts in determining custody of a child is the best interest of the child. . . .

[and]

> "And technical rules of practice and pleading are of little importance in determining issues concerning custody of divorced parents. . . ." (citations omitted)

Believing it to be our duty to do so in this type of case, we decline to follow the usual rule which would preclude our review of the facts which changed the custody of the two young children. We now turn to a consideration of the pleadings and the evidence found in our record.

We summarize the motion to modify the decree. The first four paragraphs averred: (1) the court was one of continuing jurisdiction; (2) identified the children; (3) stated the address of the mother; and (4) alleged that there had been no change "in the status of the children's property." *All of the allegations relating to a change in conditions* are to be found in paragraph V set out in the margin.[2]

In order to sustain a default judgment, it is essential that the petition show a good cause of action. *Griswold v. Carlson*, 151 Tex. 246, 249 S.W.2d 58, 60 (1952). And, under *Tex.R.Civ.P. 45 and 47*, the pleadings must give a party fair notice of the claim involved. *White v. Jackson*, 358 S.W.2d 174, 176–177 (Tex.Civ.App.—Waco 1962, writ ref'd n.r.e.). We are of the view that the allegations quoted did not give fair notice to the mother of the *facts* and circumstances relied upon to authorize a change in the custody of her children. See and compare *Lopez v. Abalos*, 484 S.W.2d 613, 614–615 (Tex.Civ.App.—Eastland 1972, no writ), wherein it was held that a general allegation of negligence would not support a default judgment.

However, we do not turn our decision upon the inadequacy of the pleadings. Assuming, *arguendo*, that the broad conclusory allegations noted in footnote 2 constituted adequate notice, a review of the evidence discloses that the father did not prove his right to a change in the custodial order. Our review of the statement of facts discloses that the father's testimony, in question and answer form, took only forty-six lines in the record, at least one-half of which were words spoken by his counsel. A careful review of the entire record leads to the inescapable conclusion that the mother's refusal to permit him to visit the children was the sole basis of the father's complaint. We quote in the margin *all* of the testimony relating to the change in conditions, noting that there is absolutely no testimony as to the conditions in the mother's home or in that of the father.[3]

---

**2.** "The circumstances of the children or parent have so materially and substantially changed since the entry of the order to be modified that the retention of the present managing conservator would be injurious to the welfare of the children and that the appointment of Movant as managing conservator would be a positive improvement for the children. Further, Movant alleges that, on or about February 24, 1979, Respondent left the state, taking the children who are the subject of this suit with her, without warning to Movant and for the purpose of preventing his access to the children. Movant requests that the Court appoint him managing conservator of the children who are the subject of this suit, and enter proper orders for the support of these children."

**3.** After identifying himself, the cause, and the children, this sequence is shown in the statement of facts:
"Q.  Has there been any change in the status of the children's property since the decree of divorce?
A.  No, ma'am.
Q.  Is there any change in the children's circumstances, the way they are living?
A.  No, ma'am, not that I know of.
Q.  Is there any change in the *children's situation* that lead [sic] you to bring this action?
A.  Well, she wont [sic] let me see them.
.  .  ." (emphasis supplied)

Out of this sparse and factually insufficient record, counsel for the father has prepared and the trial court has signed an instrument designated as findings of fact and conclusions of law. This belatedly filed instrument [4] contains *twenty* findings of fact taking up two complete legal pages of findings from which *eight* conclusions of law are drawn. As might be expected, the findings and the conclusions literally track the language of the statute, *Sec. 14.08(c)*, quoted earlier. However, the only inference to be drawn is that the sole base to the findings and conclusions is the fact that the mother moved to North Carolina after the entry of the original order where she denied the father visitation privileges.

■ Ordinarily, findings of fact and conclusions of law, when adequately supported by competent evidence, are binding upon an appellate court. See *Gandy v. Culpepper*, 528 S.W.2d 333, 335 (Tex.Civ.App.—Beaumont 1975, no writ), and authorities therein cited. However, the rule laid down in *Swanson v. Swanson*, 148 Tex. 600, 228 S.W.2d 156, 158 (1950), is still valid. There, the Court held:

> "There is nothing in the rules which provides that in a case tried before the court without a jury the findings of fact are conclusive on appeal when a statement of facts appears in the record."

See also, *Douthit v. McLeroy*, 539 S.W.2d 351, 352 (Tex. 1976); and *Block v. Waters*, 564 S.W.2d 113, 115 (Tex.Civ.App.—Beaumont 1978, no writ).

■ in this instance, we follow the procedure used in *Block v. Waters*, supra, wherein we said: ,

> "Since the findings of fact filed by the trial court are without support in the evidence, we will pass upon plaintiff's points of error without regard thereto." (citations omitted)

Able counsel for the father has cited to us several cases which hold, and properly so, that the discretion of the trial court, based upon competent evidence, is subject to being set aside only for a clear and manifest abuse of discretion. Some of the authorities cited are set forth in the margin.[5] We readily accept the general statements of the prevailing rules of law set forth in such cases.

We do not find any of the cases cited to be applicable when the moving party has utterly failed to offer any evidence sufficient to meet even the "threshold inquiry" mentioned in *D.W.D. v. R.D.P.*, supra (571 S.W.2d at 226).

■ The trial court had not a single line of testimony concerning the living conditions of the children when with their mother; not a word was spoken as to the conditions under which they would live if custody was changed to the father; and, equally important, there was no evidence of any change in conditions since the entry of the original order. The single fact established was that the mother had moved to North Carolina and had denied the father visitation privileges in that state. Standing alone, we hold that this constituted no evidence authorizing the trial court to change the conservatorship of the children from the mother to the father. See *Watts v. Watts*, 563 S.W.2d 314 (Tex.Civ.App.—Dallas 1978, writ ref'd n.r.e.), and authorities therein cited.

Following the applicable standards of review of the legal and factual sufficiency of the evidence [see, e.g., *Garza v. Alviar*, 395 S.W.2d 821, 823 (Tex. 1965)], we sustain the mother's first or "no" evidence point of error. Thus, it follows that we likewise find an abuse of discretion in changing the conservatorship of the children. For these reasons, the judgment of the trial court is reversed and judgment now rendered rein-

---

4. The transcript was filed in this Court on September 14, 1979; the supplemental transcript containing the findings and conclusions was filed on December 21, 1979, more than two months after the filing of appellant's brief. See *Tex.R.Civ.P. 296.*

5. Counsel cites, inter alia: *Davis v. Davis*, 499 S.W.2d 922, 925 (Tex.Civ.App.—Houston [14th Dist.] 1973, no writ; *Farris v. Farris*, 404 S.W.2d 638, 639 (Tex.Civ.App.—Amarillo 1966, no writ); *Davis v. Duke*, 537 S.W.2d 519, 521 (Tex.Civ.App.—Austin 1976, no writ).

stating and affirming the original judgment which appointed the mother managing conservator of the two children. It is so ordered.

REVERSED and RENDERED.

DIES, C. J., not participating.