Jeannette Wilkerson KLEIN, Relator,

v.

Don E. CAIN, Judge, Respondent.

No. 07–84–0119–CV.

Court of Appeals of Texas,
Amarillo.

July 12, 1984.

David L. Martindale and Christy B. McCrary, Pampa, for relator.

Phil N. Vanderpool, Pampa, for respondent.

Before REYNOLDS, C.J., and DODSON and COUNTISS, JJ.

REYNOLDS, Chief Justice.

Relator Jeannette Wilkerson Klein was granted leave to file her petition seeking a writ of mandamus compelling the Honorable Don E. Cain, Judge of the 223rd Judicial District Court of Gray County, to grant her application for writ of habeas corpus to secure, pursuant to a subsisting court order, the possession of her minor son from his father, R.D. Wilkerson, Jr. This original proceeding requires us to determine whether Judge Cain was authorized, upon the record developed in the trial court, to deny the application for writ of habeas corpus and order that the son remain in the possession of the father pending a final hearing on the merits of the father's motion to modify the subsisting court order. Concluding that Judge Cain was not so authorized, we conditionally grant the writ.

A history of the events leading to this original proceeding is appropriate to position the issues for determination. Upon dissolving the marriage of the minor son's parents, Jeannette and Dick,[1] on 17 September 1976, the trial court appointed Jeannette managing conservator of their three-year-old son. Five years later, the court, acting on Dick's 15 August 1981 motion, modified its conservatorship order and appointed Dick the managing conservator, thereby investing him with possession of the child. Jeannette appealed. For the reasons articulated in an unpublished opinion, the trial court's order of modification was reversed for factual insufficiency of the evidence, and the cause was remanded to the trial court. *In the Interest of R__ D__ W__, III, A Child,* No. 07–81–0252–CV (Tex.App.—Amarillo, Oct. 6, 1983, writ dism'd w.o.j.).

Thereafter on 8 February 1984, both Jeannette and Dick applied to the trial court for an adjudication of their respective rights to possession of the child. Jeannette filed an application for writ of habeas corpus to secure possession of the child she was entitled to under the court's 1976 order. Dick, supplementing his 1981 motion, again moved for a modification of conservatorship, and sought temporary orders pending a determination. On the same day and without notice to Jeannette, the court temporarily restrained her from taking possession of the child, and set a hearing on both the application for writ of habeas corpus and the motion for temporary orders for 17 February 1984.

The court refused to limit the scheduled hearing to the habeas corpus matter and proceeded to hear Dick's application for temporary orders. Having heard the testimony of the parties and their spouses, the court denied a writ of habeas corpus and named Dick the temporary managing conservator of the child, announcing

> I find that the child has been with the father for the past two and a half years, and I further find that it would be in the best interest of the child to leave his temporary custody, pending a resolution of this cause, with the father.

The same finding was echoed in the court's 17 February 1984 order as the basis for appointing Dick the temporary managing conservator.

The court honored Jeannette's request for findings of fact and conclusions of law. In making a series of factual findings, the court found, in essence, that during the two and one-half years the child has been living with his father, he has adjusted to his homelife; his ability to concentrate on his school work, his school grades and his

---

1. Because the parents were referred to by their Christian names upon submission of this cause, they will be so designated in this opinion.

development and maturity level have improved; immediately following the appellate courts' decisions and contact with his mother, his school work, attitude and ability to concentrate suffered; and that to remove him from his present environment would be detrimental to his emotional well-being. From these facts, the court drew the legal conclusion "that the circumstances of the child show a serious, immediate question concerning the welfare of the child the subject of this suit in that to remove the child from his present home and have the child change homes and life-styles again would be detrimental to the child's emotional well-being."

■ Upon the reversal of the court's 1981 modification order, the 1976 judgment by which Jeannette was appointed managing conservator of the child was the last valid, subsisting order governing the right to possession of the child. When Jeannette filed her application for writ of habeas corpus, the provisions of section 14.10 of the Texas Family Code (Vernon Pamp. Supp. 1984)[2] were invoked. Those provisions material to the issues before us provide that:

(a) If the right to possession of a child is presently governed by a court order, the court in a habeas corpus proceeding involving the right to possession of the child shall compel return of the child to the relator if and only if it finds that the relator is presently entitled to possession by virtue of the court order.

(b) The court shall disregard any cross action or motion pending for modification of the decree determining managing conservatorship, possession, or support of or access to the child unless it finds that:

\* \* \* \* \* \*

(2) the child has not been in the relator's possession and control for at least 6 months immediately preceding the filing of the petition for the writ.

(c) The court may issue any appropriate temporary order if there is a serious immediate question concerning the welfare of the child.

Notwithstanding, the court, shortly after it began taking testimony, announced, without stating a reason, that it was "going to overrule or deny the writ of habeas corpus and proceed to hear any testimony either of you want to present in regard to temporary custody of this child." Absent a recitation of authority in the court's subsequent order denying the writ of habeas corpus and naming Dick the temporary managing conservator of the child, it seems apparent the court proceeded in conformity with section 11.11, which states, in pertinent part, that:

(a) In a suit affecting the parent-child relationship, the court may make any temporary order for the safety and welfare of the child, including but not limited to an order:

(1) for the temporary conservatorship of the child.

However, given the subsistence of the 1976 order appointing Jeannette the managing conservator and Dick's pending motion for modification of the conservatorship, the court was prohibited from proceeding under section 11.11(a)(1) unless there was compliance with section 14.08(g), which mandates that:

While a motion to modify or a petition for further action is pending, the court may not issue temporary orders under Section 11.11 of this code that have the effect of changing the designation of the managing conservator unless the order is necessary because there is a serious, immediate question concerning the welfare of the child.

Section 11.07(b); *Watts v. Watts*, 573 S.W.2d 864, 868 (Tex.Civ.App.—Fort Worth 1978, no writ). Still, as noted, the court predicated its order on its factual finding that it is "in the best interest of the child." The court did not make the factual finding of "a serious, immediate question concerning the welfare of the child."

---

**2.** All future references to sections will be to the sections of the Texas Family Code (Vernon Pamp.Supp.1984).

In seeking to compel, by mandamus, the vacation of the court's order for temporary conservatorship and the granting of her application for writ of habeas corpus, Jeannette contends that the court was compelled by section 14.10(a) to return the child to her possession without regard to Dick's motions for modification and temporary orders. This obtains, she argues, because the child has not been out of her possession and control for at least six months immediately preceding the filing of her application for the writ since she exercised possession of and control over the child given her as possessory conservator in the court's reversed 1981 modification order, and the evidence does not support the court's conclusion that there is a serious immediate question concerning the welfare of the child.

To the contrary, Dick rejoins, Jeannette represented to the court through her counsel that the child had not been in her possession for six months immediately preceding the filing of her application for the writ. Therefore, he says, not only was the court not required to disregard his motion for modification, but the court was authorized by section 11.11 in conjunction with section 14.08(g) to entertain his motion for temporary orders and to issue, as it did, a temporary order maintaining the status quo pending a hearing on the merits of his motion for modification, particularly since the evidence is sufficient to support the court's expressed conclusion that there is a serious immediate question concerning the welfare of the child. In any event, he asserts, the temporary order made pursuant to section 11.11 is not appealable, *Craft v. Craft*, 580 S.W.2d 814, 815 (Tex.1979), and, consequently, Jeannette's petition for writ of mandamus should be dismissed for want of jurisdiction.

■ In view of the presentations by the parties, it is appropriate to notice the procedural status of this cause. The proceeding before us is not an attempted appeal of an unappealable interlocutory order over which we lack jurisdiction; instead, it is an original proceeding invoking the jurisdiction we have to issue writs of mandamus. Tex.Rev.Civ.Stat.Ann. art. 1824 (Vernon Supp. 1984). The jurisdiction is exercised if the trial court has acted beyond its power and authority to vacate or change a final adjudication of conservatorship by an unauthorized order for temporary conservatorship in lieu of enforcing the final adjudication by an authorized writ of habeas corpus. *McElreath v. Stewart*, 545 S.W.2d 955 (Tex.1977).

■ The court did not chart the authoritative course it followed in denying the writ and ordering the temporary conservatorship. The first question, then, is whether the court was authorized to deny the writ under section 14.10(b)(2) because the record established, absent a factual finding, that the child had not been in Jeannette's possession and control for at least six months immediately preceding the filing of her application for the writ. If that be an established fact, the court was authorized to deny the writ. *Strobel v. Thurman*, 565 S.W.2d 238, 239 (Tex.1978).

■ Dick submits, in effect, that the question is foreclosed because Jeannette's counsel represented to the court, and the court relied on the representation, that the child had not been in her possession for the prescribed six months period of time. Considering the context in which counsel's comment was made, the modification and explanation of it, and its treatment by the parties, we do not deem that it was a judicial admission which bound Jeannette contrary to her theory of recovery.

Counsel's comment—*viz.*, "[W]e will make no argument to this fact that this child has not been in the possession of my client for the six months' period of time immediately preceding the filing of the application for a Writ"—was included in his opening statement of objection to the court's consideration of Dick's pending motion for modification in view of the application for writ of habeas corpus. Having made the comment, counsel straightway informed the court "that the reason that fact exists is because ... we were operating under that [1981] order while it was on

appeal." Counsel then ventured the thought that the legislature did not intend section 14.10(b)(2) to operate as a denial of the writ to one whose possession of a child is interrupted for more than six months by a modification order which is later reversed on appeal; however, that contention is not advanced in this original proceeding, and we do not pause to pursue it.

In the midst of counsels' ensuing colloquy with the court regarding the procedure to be followed, Dick's counsel informed the court that he would raise the issue of the six month exception of section 14.10(b)(2). In this regard, he pointed out that, "as stipulated or as agreed or as uncontested," the child has been out of Jeannette's possession for more than six months, and has not been in her possession for the two and one-half years that the 1981 modification order existed.

■ It seems at once obvious that both counsel, and presumably the court, equated the section 14.10(b)(2) phrase "possession and control" with the legal right to possession and control granted to Dick as the managing conservator by the 1981 modification order. But, to so construe the phrase as the legal right to possession and control renders meaningless the section 14.-10(b)(2) provision, for a relator resorts to the great writ under section 14.10(a), as Jeannette did, on the basis of a court-ordered legal right to possession, which necessarily must be held by the relator "immediately preceding the filing of the petition for the writ." It follows that the section 14.10(b)(2) phrase "possession and control" means the physical possession and control of the child by the relator. *Rankin v. Gray*, 584 S.W.2d 539, 542 (Tex.Civ.App.—Waco 1979), *rev'd and appeal dism'd for want of jurisdiction*, 594 S.W.2d 409 (Tex. 1980). Conformably, this meaning is applied when possession of a child is sought in a section 14.10(a) habeas corpus proceeding. *See, e.g., Strobel v. Thurman, supra.*

■ Applying the proper meaning of possession and control, it is apparent that rather than making statements of fact fixing the physical possession and control of the child, both counsel merely were expressing the opinion or conclusion that the legal right of possession awarded Dick as the managing conservator by the 1981 modification order governed the possession and control of the child addressed by section 14.10(b)(2). Since a counsel's opinion or conclusion does not have the force and effect of a judicial admission, *Starks v. City of Houston*, 448 S.W.2d 698, 699–700 (Tex.Civ.App.—Houston [1st Dist.] 1969, writ ref'd n.r.e.), the comment by Jeannette's counsel concerning her lack of legal possession does not foreclose her contention that the child has not been out of her physical possession and control for at least six months immediately preceding the filing of her application for the writ of habeas corpus. Moreover, Dick is in no position to assert that Jeannette's contention is foreclosed by her counsel's representation to the contrary, for he gave the testimony initially showing the extent of her possession and control of the child during the existence of the 1981 modification order. *Id.*

In its 1981 modification order, the court appointed Jeannette the possessory conservator of the child, ordering that she "shall have possession of and access to said child" at specified times on designated weekends, holidays and during the summer school vacation, with the duty of "control ... of said child." From that time onward, Dick testified as the first witness, her visitation was "[v]irtually limitless; every time she asked for him, on an average basis, once a week," as well as, he added, additional visitation, all of which was in addition to the visitation ordered by the court. The court credited the testimony by finding that Jeannette has "received substantial visitation with the child while the child has resided in the home of his father."

■ In this light of the record, the court failed or refused to find as a fact that the child has not been in Jeannette's possession and control for at least six months immediately preceding the filing of her application for writ of habeas corpus. We agree with the court that this record will not support a

factual finding that she did not have physical possession and control of the child for at least six months before she applied for the writ. Absent this fact, the writ should have been granted upon Jeannette's proof of her legal right to possession under the 1976 judgment, *Strobel v. Thurman, supra,* unless there was, at the time, a serious immediate question concerning the welfare of the child. Sections 14.10(b)(2), 14.-08(g).

■■■ However, the order appointing Dick the temporary managing conservator does not contain a factual finding of "a serious immediate question concerning the welfare of the child," a factual finding necessary for· an order made pursuant to section 14.10(c), *Whatley v. Bacon,* 649 S.W.2d 297, 299 (Tex.1983), and, *a fortiori,* a factual finding necessary for an order made pursuant to section 14.08(g). Instead, the order contains the factual finding "that it is in the best interest of the child for [Dick] to be appointed his Temporary Managing Conservator during the pendency hereof," an inadequate factual finding for the denial of a writ of habeas corpus. *Schoenfeld v. Onion,* 647 S.W.2d 954, 955 (Tex.1983).

■■■ Still, the court did conclude as a matter of law from the facts found "that the circumstances of the child show a serious, immediate question concerning the welfare of the child the subject of this suit in that to remove the child from his present home and have the child change homes and lifestyles again would be detrimental to the child's emotional well-being." Yet, a conclusion of law is reached from the factual situation before the trial court and, although an appellate court is bound by unchallenged findings of fact, it is not bound

by an incorrect conclusion of law drawn therefrom. *Adams v. American Quarter Horse Ass'n,* 583 S.W.2d 828, 834 (Tex.Civ. App.—Amarillo 1979, writ ref'd n.r.e.).

■■■ We consider that the legal conclusion is erroneous under this record. No single fact finding, or a combination of the factual findings, evidences that the child, if restored to the possession of Jeannette, would be placed in that situation of imminent danger of physical or emotional harm contemplated by the statute. At most, the factual findings, as well as the legal conclusion, evince that the child's emotional well-being is better served by not changing his home and lifestyle.[3] This situation falls far short of circumstances of immediacy and seriousness required by the statute to authorize the temporary order. *McElreath v. Stewart, supra,* at 958.

■■■ It follows that, there being no serious immediate question concerning the welfare of the child who has not been out of Jeannette's physical possession and control for at least six months prior to her applying for the writ of habeas corpus, the court should have granted the writ when she showed her entitlement to the child's possession under the valid and subsisting 1976 court order. Since the court denied the writ and improperly relitigated the right to possession "in the best interest of the child," mandamus is the proper remedy to compel enforcement of Jeannette's right to possession of the child. *Saucier v. Pena,* 559 S.W.2d 654, 656 (Tex.1977).

We are confident Judge Cain will set aside his 17 February 1984 order and issue the writ of habeas corpus.[4] *McElreath v. Stewart, supra,* at 959. The writ of mandamus will issue only if he declines to do so.

---

**3.** The court's factual findings, which we accept in their unchallenged state, do not speak to the uncontradicted testimony that the child, who was not interrogated, had stated that he wanted to live with Jeannette, who expressed her love and ability to care for him and said that his lifestyle, other than his home environment, would continue in the same vein by his attending the same school and participating in the same activities.

**4.** Our determination of Judge Cain's required action under this record is not to be understood as expressing any opinion on Dick's pending motion for modification of conservatorship, which must be disregarded until the disposition of Jeannette's application for writ of habeas corpus.

Costs of this original proceeding are adjudged against R.D. Wilkerson, Jr. Tex.R. Civ.Pro. 448.

DODSON, J., not participating.