John G. MIDDLETON d/b/a Middleton Oil Company, Appellant,

v.

KAWASAKI STEEL CORPORATION, Appellee.

No. C14–84–410CV.

Court of Appeals of Texas, Houston (14th Dist.).

Jan. 3, 1985.

Rehearing Denied Jan. 31, 1985.

Linda L.S. Moroney, Pannill & Reynolds, Houston, for appellant.

W. Robert Brown, Orran Lee Brown, Liddell, Sapp, Zivley, Brown & Laboon, Houston, for appellee.

Before JUNELL, MURPHY and SEARS, JJ.

OPINION

JUNELL, Associate Justice.

John G. Middleton, plaintiff below, appeals from a judgment dismissing Kawasaki Steel Corporation granted after the court heard a special appearance motion in which Kawasaki alleged a lack of jurisdiction over its person. The court's decision to dismiss is based upon two grounds: (1) that Kawasaki Steel Corporation lacks minimum contacts with this forum so that exercise of jurisdiction over it would violate due process and (2) Middleton has not properly invoked the jurisdiction of the court in that it has not alleged the jurisdictional requirements of the Texas Long Arm Statute nor effected service according to that statute. We reverse and remand because

we hold that: (1) Kawasaki did have minimum contacts with this forum at the time Middleton's alleged cause of action accrued and should be subjected to suit in this state; and (2) Kawasaki's complaints as to service amount to a motion to quash and should not have been considered by the trial court in a Rule 120a special appearance hearing. *See* Tex.R.Civ.P. 120a.

A brief factual background will introduce the parties and issues. In December 1979 appellant Middleton, as operator in drilling a gas well in Colorado County, Texas, set 250 lengths of steel casing into the well. Oilworld Supply Company sold the casing to Middleton. Kawaski Steel Corporation of Japan (Kawasaki) allegedly manufactured the casing. Middleton alleges that the casing separated and the well had to be plugged back at a shallower, less productive zone.

In March 1980 Oilworld sued Middleton for payment for the pipe casing. Middleton filed a counterclaim for damages against Oilworld and third-party claims against Kawasaki and Japan Cotton Company (Japan Cotton), a subsidiary of Nichimen Co., Ltd., the Japanese trading company that had filled Oilworld's order for Kawasaki casing.

Middleton's claim against Kawasaki was filed May 25, 1981. In it he alleged that Kawasaki Steel Corporation was a New York Corporation authorized to do business in Texas and could be served with citation by service upon its registered agent Toshikazu Tomita at its registered office at 1440 Commerce Building, 914 Main Street, Houston, Texas. The return of service shows that citation was served by a Harris County constable by delivering the petition to "T. Tomita," a "v/p of the said corp." in person at the address alleged. If Middleton's allegations had been correct, service on Kawasaki through Mr. Tomita would have been authorized by Tex.Bus.Corp. Act Ann. art. 8.10(A) (Vernon 1980).

Middleton's allegations were wrong. Kawasaki Steel Corporation is and was a Japanese Corporation not licensed to do business in Texas. It has never had a registered agent for service of process in Texas. From 1975 until April 1, 1981, Kawasaki maintained an office at 1440 Commerce Building in Houston. On April 1, 1981, less than two months before Middleton's third-party action was filed, Kawasaki Steel Corporation formed a new, wholly-owned subsidiary, Kawasaki Steel America (Kawasaki America), and transferred its American offices to the subsidiary. The general manager for Kawasaki's Houston office, Mr. Tomita, became the general manager for Kawasaki America and all employees were transferred from the Japanese corporation to the American corporation. Kawasaki America used the same address and telephone number that had belonged to the parent. Kawasaki Steel America is a New York Corporation licensed to do business in Texas and Mr. Tomita is its registered agent for service of process at the Commerce Building address.

These facts distinguish this case from all those cited by the parties in that service of process was not even attempted through the Texas Long Arm statute, Tex.Rev.Civ. Stat.Ann. art. 2031b (Vernon 1964 & Supp. 1984).

We consider only the first six points of error proposed by appellant. Appellant sought and received leave to file a supplemental brief so that he could restate his points of error in technical compliance with the broad scope of the opinion in *La Sara Grain Co. v. First National Bank*, 673 S.W.2d 558, 568 (Tex.1984). This leave did not authorize him to add two new points of error, as appellant attempted to do.

Points of error one, two and five state that the trial court erred in holding that it lacked jurisdiction because Kawasaki Steel Corporation of Japan had insufficient contacts with Texas when the evidence showed conclusively that the company actively cultivated the Texas market, knew it was selling defective casing to a Texas oilfield supplier and had continuous and systematic contacts in the Houston market. Appellant argues that as a matter of law Kawasaki's amenability to suit in Texas was established, and alternatively, that the lower

court's findings and conclusions are so contrary to the overwhelming weight and preponderance of the evidence as to be clearly wrong and unjust.

■ Appellant has offered no guidance concerning the standard of review to which we must adhere. Appellee argues that in reviewing the no evidence claims, we should consider only the evidence and reasonable inferences from the evidence which, viewed in their most favorable light, support the trial court's findings of fact and disregard all evidence and inferences to the contrary, citing *Roark v. Allen*, 633 S.W.2d 804, 809 (Tex.1982); *Estate of Claveria v. Claveria*, 615 S.W.2d 164 (Tex.1981); and *Stedman v. Georgetown Savings & Loan Association*, 595 S.W.2d 486 (Tex.1979). This is the general rule. However, this court is not only reviewing findings of fact, but also the conclusions of law based upon those facts. Conclusions of law are always reviewable. *Muller v. Nelson, Sherrod & Carter*, 563 S.W.2d 697, 702 (Tex.Civ.App.—Fort Worth 1978, no writ).

■ We do not agree with appellee that we must presume that sufficient evidence was introduced to support the findings and judgment of the trial court. Appellee cites *Yoast v. Yoast*, 649 S.W.2d 289 (Tex.1983), a case in which the appellate record contained no statement of facts. Where a statement of facts is contained in the record, as is the case here, findings of fact are not conclusive on appeal if the contrary is established as a matter of law, or if there is no evidence to support the findings. *Swanson v. Swanson*, 148 Tex. 600, 228 S.W.2d 156, 158 (1950); *Armstrong v. Armstrong*, 601 S.W.2d 724, 727 (Tex.Civ.App.—Beaumont 1980, writ ref'd n.r.e.).

When the Dallas Court of Civil Appeals reviewed a trial court's holding that a defendant had insufficient contacts with Texas to be subject to Texas jurisdiction, it accepted all but one of the court's findings of fact, but noted that "the court's findings are not, however, a complete reflection of the evidence." *Wright Waterproofing Co. v. Applied Polymers*, 602 S.W.2d 67, 70 (Tex.Civ.App.—Dallas), *writ ref'd n.r.e. per curiam*, 608 S.W.2d 164 (Tex.1980). The appellate court then proceeded to review the other undisputed evidence in the record and reversed the trial court. The court of civil appeals found that the defendant was "doing business" in Texas and that it had sufficient contacts with this forum to acquire jurisdiction over it without offending traditional notions of fair play and substantial justice. 602 S.W.2d at 70–71. *See also National Truckers Service, Inc. v. Aero Systems, Inc.*, 480 S.W.2d 455 (Tex.Civ.App.—Fort Worth 1972, writ ref'd n.r.e.) (no findings of fact mentioned).

We take the same approach. We first will consider the court's relevant findings of fact and apply the usual "no evidence" standard of review. Then we will look to the uncontroverted evidence in the record that is not reflected in the court's findings of fact to determine whether its conclusions of law are supported by the evidence as a whole.

■ We also note at this point that it was Kawasaki's burden to establish a lack of minimum contacts because it has the burden to prove that it is not amenable to the jurisdiction of a Texas court. *Minexa Arizona, Inc. v. Staubach*, 667 S.W.2d 563, 565 (Tex.App.—Dallas 1984, no writ); Tex. R.Civ.P. 120a. If the contacts found from the evidence in the record are more than minimum contacts, then the trial court was incorrect in its conclusions of law.

■ Findings of Fact 42 through 68 relate to the issue of minimum contacts. The court found that Kawasaki Steel Corporation has never maintained an inventory in Texas; does not own real estate or other assets in Texas; is not registered to do business in Texas; has no agent or representative living or stationed in Texas at the time of hearing or at the time service was attempted; does not and did not at time of service maintain an office or place of business in Texas; has no bank accounts or telephone listings in Texas; does not pay Texas taxes; does not and never did advertise its products specifically in Texas or

direct advertising at Texas; and at no time solicited or accepted orders for its products directly in or from Texas nor sold any of its products directly to a customer in Texas.

The court also found that Kawasaki products, including the casing that allegedly failed, reach Texas through trading companies in Japan. A Texas customer places an order with a trading company in this country (like Japan Cotton). That trading company forwards the order to its Japanese parent company, which places the order with Kawasaki. Kawasaki has always sold its products to the Japanese trading company f.o.b. Japan and is paid in Japan.

All of these findings of fact are supported by the record. We note that most of them focus on Kawasaki's contacts with this forum at the time of the hearing in 1984 or time of service in June of 1981. We consider the crucial period for determining Kawasaki's amenability to process in Texas to be the time when the allegedly defective pipe was sold to Middleton and failed in a Texas gas well in 1979. At that time Kawasaki Steel Corporation did maintain an office in Houston, Texas. *See Collins v. Mize*, 447 S.W.2d 674, 675–76 (Tex. 1969) ("We see no problem of due process when the forum state is determining a controversy arising out of a transaction consummated in the forum state at a time when the defendant himself was a resident of the forum state.")

Concerning the crucial period, the court found:

71. Kawasaki Steel Corporation maintained an office in Houston, Texas from 1975 until April of 1981. This office was used to provide marketing research and information gathering services in the area. The office was not used to solicit or accept orders for Kawasaki Steel Corporation products.

72. At no time has Kawasaki Steel Corporation initiated a process by which its products are sold to any customer or purchaser in Texas.

77. Kawasaki Steel Corporation has done nothing purposefully to avail itself of the economic benefits of the Texas market.

Of the findings of fact quoted above, we hold that findings 71 and 72 are literally supported by the evidence. Kawasaki did not directly solicit orders from Texas customers through its office in Houston from 1975 to 1981. But we hold that finding of fact 77 cannot stand. The converse of the finding is established conclusively in undisputed evidence in the record.

Testimony about the operation of Kawasaki Steel Corporation's Houston office from 1975 until April 1, 1981, is found in Mr. Tomita's testimony at the special appearance hearing as well as in his September 1981 deposition which was also before the court as evidence. Both times Mr. Tomita stated that the Kawasaki Steel Corporation office performed essentially the same services and served the same functions as the Kawasaki Steel America office that succeeded it. Before April 1981 the office did sales promotion, marketing research and information gathering activities and after-sales service to Kawasaki Steel Corporation's customers in North America and Mexico. It acted as liason between Kawasaki Steel Corporation and its customers. It afforded "convenience" to Kawasaki Steel Corporation personnel and others designated by Kawasaki Steel when they visited North America and Mexico. The employees of Kawasaki Steel Corporation became employees of Kawasaki America Corporation on April 1, 1981. The record does not reveal the exact number of employees in 1979, but Mr. Tomita testified at his deposition in September 1981 that 20 people worked in three offices in New York, Los Angeles and Houston.

Another deponent, Hiroaki Kinjyo, manager of Japan Cotton's steel department, stated that Kawasaki Steel Corporation would occasionally send engineers and representatives from Japan to visit Houston customers to explain new products or the quality of its pipe.

Even if Kawasaki Steel Corporation did not directly solicit or take orders from customers in Texas, it is clear that it was

conducting activities in Texas with the purpose of increasing the quantity of its products that reached Texas oil fields. What reason could there be to conduct market research and sales promotion activities in a given area if it were not to enter that market at least indirectly? The fact that Kawasaki does not sell directly, but through Japanese trading companies, does not diminish the fact that it actively sought to have its products end up in Texas. It has "engaged in an activity calculated to extract profits from the markets of Texas." *Uvalde Rock Asphalt Co. v. Consolidated Carpet Corp.*, 457 S.W.2d 649 (Tex.Civ. App.—Beaumont 1970, writ ref'd n.r.e.).

Both appellant and appellee agree that the analysis of the reach of Texas courts extends to the permissible limits of due process. Both agree that three elements must exist to sustain jurisdiction over Kawasaki: (1) Kawasaki must have purposefully done some act or consummated some transaction in Texas; (2) Middleton's cause of action must arise from, or be connected with, such act or transaction; and (3) the assumption of jurisdiction by the forum state must not offend traditional notions of fair play and substantial justice. *U-Anchor Advertising, Inc. v. Burt*, 553 S.W.2d 760, 762 (Tex.1977); *O'Brien v. Lanpar Co.*, 399 S.W.2d 340 (Tex.1966). Kawasaki has purposefully canvassed the oilfield market by placing employees in Houston, the center of the oil business in the United States, to do market research and sales promotion. Partly as a result of those efforts it ships to the port of Houston 210 metric tons of steel products annually. Middleton's cause of action is connected with that purposeful activity. The pipe he purchased from Oilworld was manufactured by Kawasaki. Kawasaki's own inspection certificates filled out in Japan list Oilworld as the customer and the port of Houston as the shipping destination. The assumption of jurisdiction in Texas does not offend traditional notions of fair play and substantial justice. Kawasaki cannot expect to maintain "eyes and ears" in Texas and yet keep the rest of its corporate self safely in Japan away from Texas plaintiffs.

The particular conclusions of law that are in error are:

42. Kawasaki Steel Corporation has had few direct contacts with the State of Texas. The primary connection between Kawasaki Steel Corporation and the State of Texas has been its maintenance of an office in Houston, Texas from 1975 until April of 1981 and rare visits by personnel of Kawasaki Steel Corporation to Texas. These contacts with this forum are insufficient to satisfy the demands of due process.

45. Kawasaki Steel Corporation has had such minimal contacts with Texas that the maintenance of this suit in this forum would offend traditional notions of fair play and substantial justice, consideration being given to the quality, nature and extent of Kawasaki Steel Corporation's activity in Texas, the relative convenience of the parties, the benefits and protection of the laws of the forum state afforded the respective parties and the basic equities of the situation.

51. Kawasaki Steel Corporation's contacts with the State of Texas do not suggest that it has purposefully availed itself of the benefits of this forum state.

We hold that the above conclusions of law are in error. Kawasaki should not have been dismissed. Grounds of error one, two and five are sustained.

■ Appellant's points of error three, four and six raise the next issue before us: Whether the court properly dismissed Kawasaki on the ground that Middleton did not serve the defendant foreign corporation through one of the methods set out in the Texas Long Arm Statute, Tex.Rev.Civ.Stat. Ann. art. 2031b (Vernon 1964 & Supp.1984).

As noted above, Middleton's service on Kawasaki was made on the incorrect assumption that it was a New York corporation licensed to do business in Texas. Service under 2031b was not attempted. Kawasaki argues in a cross point that failure to adhere to the statutorily authorized

means for service of process deprives a court of personal jurisdiction and that this failure is reason to dismiss the defendant. We agree with Kawasaki that the concept of personal jurisdiction comprises two components: a defendant's amenability to jurisdiction and service of process. We do not agree that the Texas Rules of Civil Procedure allow a foreign defendant to question the existence of both components in a Rule 120a special appearance.

Rule 120a is available "for the purpose of objecting to the jurisdiction of the court over the person or property of the defendant *on the ground that such party or property is not amenable to process* issued by the courts of this state." Tex.R. Civ.P. 120a (emphasis added).

We recognize that numerous courts of civil appeals have affirmed dismissals granted upon special appearance motions when the plaintiff failed to make all the necessary 2031b jurisdictional allegations or when the defendant disproved those allegations. *Burgess v. Ancilliary Acceptance Corp.,* 543 S.W.2d 738 (Tex.Civ.App.—El Paso 1976, writ ref'd n.r.e.); *Gathers v. Walpace Co.,* 544 S.W.2d 169 (Tex.Civ.App. —Beaumont 1976, writ ref'd n.r.e.) and *Curry v. Dell Publishing Co.,* 438 S.W.2d 887 (Tex.Civ.App.—El Paso 1969, writ ref'd n.r.e.). Another court reluctantly affirmed a special appearance dismissal because the plaintiff on appeal was alleging a reason for asserting jurisdiction that was not alleged in his petition or raised at the trial court. *TM Productions, Inc. v. Blue Mountain Broadcasting Co.,* 623 S.W.2d 427 (Tex.Civ.App.—Dallas 1981), *writ ref'd n.r.e. per curiam,* 639 S.W.2d 450 (Tex. 1982).

These cases depend upon the authority of *McKanna v. Edgar,* 388 S.W.2d 927 (Tex. 1965). The Supreme Court in *McKanna* was deciding the merits of a writ of error after the defendant had suffered a default judgment. "The particularity of pleading required to sustain a default judgment against a direct attack was a critical consideration in that case." *Collins v. Mize,* 447 S.W.2d 674, 675 (Tex.1969). A different situation arises when considering the pleadings and proof offered at a Rule 120a hearing. Even in *McKanna,* the defendant did not escape being haled into a Texas court. The case was remanded for trial because the defendant was presumed to have entered a general appearance when she filed her writ of error. 388 S.W.2d at 930.

We agree with the dissent by Associate Justice Akin in *TM Productions, Inc. v. Blue Mountain Broadcasting Co.,* 623 S.W.2d 427, 434–435 (Tex.Civ.App.—Dallas 1981, writ ref'd n.r.e.) and the majority in *Steve Tyrell Productions, Inc. v. Ray,* 674 S.W.2d 430 (Tex.App.—Austin 1984, no writ). A court hearing a Rule 120a motion should only consider arguments regarding the forum's power over the defendant, that is his amenability to process, and not any arguments concerning defects in service.

Our holding does not place a defendant like Kawasaki in the position of choosing either relief under Rule 120a or under a motion to quash service, as appellee argues. There is no reason why Kawasaki could not have limited its Rule 120a special appearance arguments to the lack of minimum contacts issue. If that had failed, it could have immediately filed a motion to quash. In fact, Kawasaki's special appearance pleading was limited to denying amenability to process. It was only in briefs and argument to the trial court that Kawasaki brought in its claim that dismissal was proper because Middleton did not serve process under art. 2031b. Points of error three, four and six are sustained.

There is no dispute that Kawasaki has received actual notice of the suit. Mr. Tomita forwarded a copy of the process he accepted to the New York office of Kawasaki Steel America and the Tokyo headquarters of Kawasaki Steel Corporation. We remand to the trial court with instructions that Kawasaki Steel Corporation shall be deemed to have entered its appearance at ten o'clock a.m. on the Monday next after the expiration of twenty (20) days after the day on which the mandate of this court is filed in the office of the district clerk of Chambers County, Texas, and that

**48**

Kawasaki Steel Corporation is deemed to have been duly served so as to require it to appear and answer at that time. *See* Tex. R.Civ.Pro. 122.