**Janeann GRIMES, Relator,**

v.

**Honorable Romeo FLORES, Respondent.**

No. 04–86–00271–CV.

Court of Appeals of Texas, San Antonio.

Aug. 29, 1986.

William A. Dudley, Corpus Christi, for appellant.

Jack B. Peacock, Jr., Falfurrias, Raul E. Guerra, San Antonio, for appellee.

## ON RELATOR'S PETITION FOR WRIT OF MANDAMUS

CANTU, Justice.

Relator, Janeann Grimes, petitioned this court seeking a Writ of Mandamus to compel the Honorable Romeo Flores, Judge of the 79th District Court of Brooks County to vacate Temporary Orders he issued appointing Joe Grimes, the real party in inter-

est, the managing conservator of the Grimes' two minor daughters.

Relator was appointed managing conservator of the minor children by virtue of a decree of divorce dated August 26, 1983.[1] Thereafter Relator moved to Illinois where she joined her younger daughter. The older child remained in Texas by permission of Relator. On July 4, 1984, the oldest child was reunited with her sister and Relator in Illinois. Following some problems, Relator obtained an Illinois order enjoining Joe from attempting to remove the children from the State of Illinois. Joe then returned to Texas and instituted a modification proceeding involving custody which resulted in the removal of Relator as managing conservator and the substitution of Joe and his new wife as managing conservators of the minor children. *See Grimes v. Grimes,* 706 S.W.2d 340 (Tex.App.—San Antonio 1986, writ dism'd w.o.j.).

Thereafter, Relator, on or about October 4, 1984, filed an Application for Writ of Habeas Corpus with the District Court in Brooks County seeking to recover possession of the children based upon the status of managing conservator granted Relator in the divorce decree dated August 26, 1983. No hearing was ever granted Relator on the application because of the modification order changing custody from Relator to Joe dated September 6, 1984. On appeal to this court, a panel of this court, on February 19, 1986, held that Texas courts had no jurisdiction over one child, and although having jurisdiction over the other child, should have deferred to the Illinois courts the question of custody of both children. *Grimes v. Grimes, supra.*

On February 24, 1986, Relator requested that the trial court set a hearing on the Application for Writ of Habeas Corpus filed back in October of 1984. A hearing on the application was set for February 26, 1986. At the hearing, Relator presented evidence on the issue of the present right to possession. Instead of making its ruling, the trial court ordered the preparation of a social study concerning the children.

On March 11, 1986, an Application for Writ of Mandamus was filed with this court by Relator seeking to compel the trial judge to rule on the Application for Habeas Corpus. This court accepted jurisdiction and conditionally granted the Writ of Mandamus. The trial court was instructed to conduct a full hearing on the Application for Writ of Habeas Corpus and into the existence of an alleged serious immediate question concerning the children's welfare.

On April 23, 1986, the trial court conducted the hearing ordered by this court. Instead of entering its ruling at the termination of the hearing, the trial court requested briefs of counsel. On May 5, 1986, by letter, the trial court advised the parties of its decision to deny the Writ of Habeas Corpus and to enter "Temporary Orders." The temporary orders impliedly deny the Writ of Habeas Corpus and appoint Joe and his present wife temporary managing conservators of the children. While the "Temporary Orders" do not purport to remove Relator from acting as the managing conservator, they do effectively deprive her of immediate possession of the children, and place custody of the children with Joe and his wife "until it is demonstrated that (1) the Relator, who has pending criminal charges in the State of Illinois, will not be delivered to a penal institution; and (2) the children would not suffer physical or emotional harm if immediately delivered to Relator." It is apparent that the trial court sought to enter its "Temporary Orders" based upon what it considered a serious immediate question concerning the welfare of the children. *See* TEX.FAM. CODE ANN. § 14.10(c).

On May 27, 1986, Relator filed her Petition for Writ of Mandamus seeking to compel the trial court to vacate its "Temporary

---

1. We note that in *Grimes v. Grimes,* 706 S.W.2d 340, 341 (Tex.App.—San Antonio 1986) the divorce decree is said to have been signed on August 28, 1983. The Relator's brief filed herein states that the date was August 26, 1983. No copy of the decree appears in the record before us, so we are unable to resolve this discrepancy. However, the date is irrelevant to the issue before us in this case.

Orders" and to order the return of the children to Relator. Relator alleges that there is legally and factually insufficient evidence in support of the trial court's temporary orders.

On June 9, 1986, this Court heard oral arguments and deferred its ruling pending consideration of controlling authority. While this court was considering the disposition to be made, the Texas Supreme Court, on June 11, 1986, dismissed Joe's Application for Writ of Error in *Grimes v. Grimes, supra* for Want of Jurisdiction.

This court has jurisdiction under § 22.-221 of the Texas Government Code to issue writs of mandamus agreeable to the principles of law regulating such writs against a judge of a district or county court. TEX. GOV'T CODE ANN. § 22.221 (Vernon 1986).

■ Mandamus is an appropriate remedy to compel a trial court to grant an application for writ of habeas corpus to secure possession of minor children. *Saucier v. Pena* 559 S.W.2d 654 (Tex.1977); *Lamphere v. Chrisman* 554 S.W.2d 935 (Tex. 1977).

Section 14.10 of the Family Code provides in a mandatory provision:

(a) If the right to possession of a child is presently governed by a court order, the court in a habeas corpus proceeding involving the right to possession of the child shall compel the return of the child to the relator if and only if it finds that the relator is presently entitled to possession by virtue of the court order.

* * * * * *

(c) The court may issue any appropriate temporary order if there is a serious immediate question concerning the welfare of the child.

TEX.FAM. CODE ANN. § 14.10(a) & (c) (Vernon Supp.1986).

■ Generally, once a Relator has proven she is entitled to possession of the children under a prior valid order, the grant of a writ of habeas corpus is automatic, immediate and ministerial, based upon the bare legal right to possession. *See Greene v.*

*Schuble,* 654 S.W.2d 436 (Tex.1983); *Schoenfeld v. Onion,* 647 S.W.2d 954 (Tex. 1983); *Marshall v. Wilson,* 616 S.W.2d 932 (Tex.1981).

■ However, if an exception under section 14.10 is established, the trial court may make appropriate temporary orders. *Greene v. Schuble, supra* at 438. But the writ may not be used to relitigate the question of custody, *Greene v. Schuble, supra, Schoenfeld v. Onion, supra* at 955.

■ The trial court must make a finding of the existence of a serious immediate question concerning the children's welfare. *Klein v. Cain,* 676 S.W.2d 165, 172 (Tex. App.—Amarillo 1984, no writ). The court cannot consider the children's best interests in a habeas corpus proceeding, *Schoenfeld v. Onion,* 647 S.W.2d at 955, nor go beyond the immediate welfare of the children. *McElreath v. Stewart,* 545 S.W.2d 955, 957 (Tex.1977).

■ In its temporary orders, the trial court found that:

[T]here is a serious immediate question concerning the welfare of the children if immediately delivered to the Relator Janeann Grimes. The children, Jennifer Grimes and Julie Grimes, would suffer physical and emotional harm if immediately delivered to the Relator. And, in addition, the Relator has pending criminal charges both misdemeanor and felony against her in the State of Illinois which may or may not result in her confinement in a penal institution.

Thus it is clear that what the trial court has done is to permit a relitigation of custody under the guise of finding an exception to § 14.10 of the Family Code. This is apparent from the court's findings inasmuch as the serious immediate question concerning the children's welfare focuses upon what the court feels is in the best interest of the children.

If immediate delivery of the children to Relator creates such a serious question concerning the welfare of the children, surely delivery of the children to Relator

for purposes of visitation can have no different effect.

Moreover, the concerns exhibited by the trial court are no more than the usual concerns associated with any change of custody involving children of tender age. That is not, however, to say that such concerns rise to the level of immediacy and seriousness contemplated by § 14.10. If such were the case every habeas corpus proceeding would be stifled to the point of rendering Section 14.10 inoperative.

Whether Joe, as Respondent in the Habeas Corpus proceeding, established a dire emergency is questionable as evident from the proof adduced and by the court's order. Unless it was shown, and the trial court found, that the children were in imminent danger of physical or emotional harm and that immediate action was necessary to protect the children, the trial court was without authority to deny the writ. *McElreath v. Stewart* 545 S.W.2d 955 (Tex. 1977). In the absence of such showing, the trial court has clearly abused its discretion. The evidence and the trial court's order fall far short of that required before discretion to deny the writ may be exercised.

Clearly the court's order recognizes that a serious immediate question concerning the welfare of the children *will arise* if something is done *in futuro*. Nothing in the order suggests that a danger involving immediacy presently exists. So too, the trial court's concern about pending criminal charges which may or may not ever be pursued. Both reasons given are so speculative that only distortion can convert them into the present danger contemplated by the statute.

The evidence developed in support of Joe's serious and immediacy question clearly addresses, not a present and imminent danger, but rather a concern that Relator would not be able to provide the children with the stable surroundings Joe is presently providing. The focus of the hearing was, therefore, erroneously concentrated on the best interests of the children. *Cowan v. Lindsey* 683 S.W.2d 55 (Tex.App.—Tyler 1984, no writ); *Klein v. Cain*, 676 S.W.2d 165 (Tex.App.—Amarillo 1984, no writ).

Thus the trial court's order, although labelled "Temporary Orders" amounts to an order modifying the custody of the children; an order clearly prohibited by *McElreath v. Stewart, supra,* and *Schoenfeld v. Onion, supra.* See especially *Young v. Martinez* 685 S.W.2d 361 (Tex.App.—San Antonio 1984, no writ).

As evidence of this one needs only to examine the language which changes custody for an indefinite period, that is, until such time and only if Relator is able to demonstrate that she will not be delivered to a penal institution, and, worse yet, until the Relator is able to convince the trial court that the children will not suffer physical or emotional harm if they are delivered to Relator.

Inasmuch as the trial court has not found a present danger to exist, one has to wonder how Relator is supposed to convince the trial court that it no longer exists. Such an order is not temporary. Furthermore, it places the burden of proof upon Relator to show a change of conditions, much as in a modification proceeding, before she may exercise her right to possession of the children. Clearly the burden was upon Joe to show a present imminent danger and not upon Relator to show that she has minimized or removed the effects of a present serious danger to the children.

The record before this court simply does not support the findings of the trial court nor its "Temporary Orders."

Therefore, the trial court abused its discretion in refusing to grant the Writ of Habeas Corpus and in entering the so-called "Temporary Orders" in the absence of some showing that a serious immediate question concerning the welfare of the children presently exists.

Relator's Petition for Writ of Mandamus is granted; and the trial court is ordered to return the children to their managing conservator, the Relator, Janeann Grimes, and to vacate the "Temporary Orders" previously entered. Any further actions involv-

ing conservatorship of the children should be deferred to the Courts of the State of Illinois, or the state of residence of Relator. All costs are to be taxed against Joe Grimes.

ESQUIVEL, J., not participating.

BUTTS, Justice, dissenting.

I respectfully dissent.

Relator, Janeann Grimes, seeks the issuance of a writ of mandamus to compel the Honorable Romeo Flores, Judge of the 79th Judicial District Court in Brooks County, to vacate a temporary order. The court found there is a serious immediate question concerning the welfare of the children and appointed Joe Grimes temporary managing conservator of the children. She further asked the court to order the return of the children to the managing conservator.

In August 1983, Joe Grimes and Janeann Grimes were granted a Texas divorce. Janeann was appointed managing conservator of the two daughters of her marriage to Joe. Janeann took Julie, the younger girl, to Illinois where Julie then lived with the maternal grandfather. By Janeann's agreement, Jennifer lived with the maternal grandmother in Falfurrias until July 1984, when she went to Illinois. In 1984, Joe secured an order modifying custody and appointing him managing conservator of the girls; he obtained possession of the girls. Since September 1984 they have lived with Joe and his wife in Kingsville. This court reversed that custody order. (*Grimes v. Grimes,* 706 S.W.2d 340 (Tex. App.—San Antonio 1986, no writ)).[1] Thus, before this suit Janeann remained the managing conservator of the girls.

On February 26, 1986, the trial court heard relator's application for a writ of habeas corpus to procure the return of her children from Joe. TEX.FAM. CODE ANN. § 14.10 (Pamphlet Supp.1986). However, the trial court failed to rule and this court conditionally granted the writ of mandamus, compelling the trial court to hold an evidentiary hearing and to proceed to judgment. The trial court conducted a hearing on April 23, 1986, and on May 8, 1986, found there was a serious immediate question concerning the welfare of the children if returned to Janeann. The trial court appointed Joe temporary managing conservator of the children "until it is demonstrated that (1) The Relator, who has pending criminal charges in the State of Illinois, will not be delivered to a penal institution; and, (2) The children would not suffer physical or emotional harm if immediately delivered to Relator."

Relator Janeann now seeks the issuance of a writ of mandamus to compel the trial court to vacate his temporary order and to order the return of the girls to her. She claims there is legally and factually insufficient evidence in support of the trial court's finding of a serious immediate question concerning the welfare of the children. Whether the trial court abused its discretion is the only question before this court.

Mandamus is a proper remedy to compel enforcement of the managing conservator's right to custody of a child. *Mergerson v. Daggett,* 644 S.W.2d 451, 452 (Tex.1982); *Saucier v. Pena,* 559 S.W.2d 654, 656 (Tex. 1977); TEX.GOVT. CODE ANN. § 22.-221(b) (Vernon Supp.1986).

Section 14.10 of the Family Code provides in a mandatory provision:

---

1. This court recognized in *Grimes* that Jennifer has always lived in Texas. *Since September 1984 she has resided with her father.* Under any of the applicable parent-child statutes the Texas court which issued the conservatorship orders in the 1983 divorce has continuing jurisdiction now to modify the orders affecting Jennifer.

    Further the evidence in the present case shows that Janeann's mother (the grandmother) took Jennifer after the divorce through Janeann's voluntary action. Janeann gave to the

grandmother a "power of attorney" so that the grandmother could enroll the child in school and provide medical care for her. Her position in taking care of the child was more than a passing one: she claimed a right to custody given to her by Janeann.

    There is no basis in law whereby this court may arbitrarily relegate the fate of this pre-puberty child to the jurisdiction of the Illinois courts. That statement in the majority opinion is unnecessary to this mandamus proceeding.

(a) If the right to possession of a child is presently governed by a court order, the court in a habeas corpus proceeding involving the right to possession of the child shall compel the return of the child to the relator if and only if it finds that the relator is presently entitled to possession by virtue of the court order.

\* \* \* \* \* \*

(c) The court may issue any appropriate temporary order if there is a serious immediate question concerning the welfare of the child.

TEX.FAM. CODE ANN. § 14.10(a) & (c) (Vernon Supp.1986).

Once relator has proven she is entitled to possession of the children under a prior valid order, the grant of the writ of habeas corpus is automatic, immediate, and ministerial, based on her bare legal right to possession. *Greene v. Schuble,* 654 S.W.2d 436, 438 (Tex.1983); *Schoenfeld v. Onion,* 647 S.W.2d 954, 955 (Tex.1983); TEX.FAM. CODE ANN. § 14.10(a) & (c) (Vernon Supp. 1986). However, if an exception under section 14.10 is established, the trial court may make any appropriate temporary order. *Greene v. Schuble,* 654 S.W.2d at 438. But the writ may not be used to relitigate the question of custody. *Greene v. Schuble,* 654 S.W.2d at 438; *Schoenfeld v. Onion,* 647 S.W.2d at 955.

The trial court must make a finding of the existence of a serious immediate question concerning the children's welfare. *Klein v. Cain,* 676 S.W.2d 165, 172 (Tex. App.—Amarillo 1984, no writ). The court cannot consider the children's best interests in a habeas corpus proceeding, *Schoenfeld v. Onion,* 647 S.W.2d at 955, nor go beyond the immediate welfare of the children. *McElreath v. Stewart,* 545 S.W.2d 955, 957 (Tex.1977).

In the order, the trial court made the following conclusion:

[T]here is a serious immediate question concerning the welfare of the children if immediately delivered to the Relator Janeann Grimes. The children, Jennifer Grimes and Julie Grimes, would suffer physical and emotional harm if immedi-

ately delivered to the Relator. And, in addition, the Relator has pending criminal charges both misdemeanor and felony against her in the State of Illinois which may or may not result in her confinement in a penal institution.

The trial court filed findings of fact which are binding on this court if the evidence is legally and factually sufficient to support them. *Bobbitt v. Electronic Data Systems Corp.,* 652 S.W.2d 620, 622 (Tex.App.—Dallas 1983, no writ); *Armstrong v. Armstrong,* 601 S.W.2d 724, 727 (Tex.Civ.App. —Beaumont 1980, writ ref'd n.r.e.). The trial court found, among other things, that the children would suffer physical and emotional harm if immediately delivered to Janeann, and that the children experience intense depression, moodiness, bed wetting, vomiting, and crying when confronted with the prospect of returning to relator.

In *McElreath v. Stewart,* 545 S.W.2d 955 (Tex.1977), the Texas Supreme Court stated:

The court contemplated a situation where the child was in imminent danger of physical or emotional harm and immediate action was necessary to protect the child. (Citations omitted.)

The record in this case discloses nothing which could make Gregory's situation serious and immediate.

*Id.* at 958; *see Forbes v. Wettman,* 598 S.W.2d 231, 232 (Tex.1980). In *McElreath* testimony "that Gregory would be hurt and upset if he returned to his mother" and "that it would hurt him to return to his mother because he did not want to live with her ... because his mother gave him more responsibilities than his father, she nagged him, and sometimes made him mad" was insufficient and fell "far short of the necessary statutory requisites of immediacy and seriousness." So too, did the testimony that the child in *Forbes, supra,* had a fungus growth on his finger and had lost one or two pounds between the Easter and July visits. The fact that a child threatens to run away from home is insufficient to establish the immediate harm needed to in-

voke section 14.10(c). *Strobel v. Thurman*, 565 S.W.2d 238, 240 (Tex.1978).

In our case, the testimony was that Julie and Jennifer, who suffers from asthma, become violently upset when confronted with talk of returning to Illinois to live. Jennifer manifests physical symptoms such as vomiting, diarrhea, loss of appetite, crying, and bed wetting. It was necessary to take her to the hospital for treatment during the February hearing. Further, the girls are afraid to play alone outdoors and Jennifer now insists on being picked up in her classroom rather than on the playground due to fear of being taken away.

The evidence at trial shows that Janeann lived with her father in Illinois and had done so for about two weeks. She has no income other than what she is paid for attending school. Janeann's mother testified that when Jennifer lived with her she would give Janeann the money to pay for Jennifer's asthma shot, but that Jennifer would not receive the shot. She stated that she knows from her own personal knowledge that Janeann had no home herself. She said she believed there was a serious immediate question concerning the children's welfare if they were returned to their mother.

Janeann's sister testified she saw the conditions under which the two girls lived when she was in Illinois in 1984 at their house. She said they slept on the floor on a "cushion." There were no sheets, and their clothes were on the floor or in boxes.

The paternal grandmother testified that her knowledge of the relator was based on how Janeann "raised them in Falfurrias" and she knew she had not changed. Her testimony was that returning the children to the mother would in effect, "tear up" the emotional stability of the children. There was testimony that in Texas Janeann also wrote "bad checks."

Israel Villarreal, a child protective services specialist with the Texas Department of Human Services, had been earlier appointed by the trial court to make a social study of the situation. His social study does not include an investigation into Janeann's present home environment and lifestyle. Based on his interview with the children, he testified it is his opinion the children would be in imminent danger of emotional harm and immediate action would be necessary if they were returned to their mother. He stated that the sudden move away from their present home with Joe is not to their benefit; that they need their present environment.

Over Janeann's objection solely on grounds of relevancy, Joe introduced in evidence certified copies of one felony indictment and two informations filed against Janeann in Illinois for passing bad checks. She stated the felony will be reduced to a misdemeanor upon restitution and that restitution has been partially made. Janeann complains on appeal that no proper predicate was laid for the admission of these documents in evidence. However, she made no such objection at the hearing and has, therefor, waived her complaint. *Wilkins v. Royal Indemnity Co.*, 592 S.W.2d 64, 68 (Tex.Civ.App.—Tyler 1979, no writ). Moreover, she testified about the criminal charges.

The trial court had sufficient evidence to support its findings of fact of the existence of a serious immediate question concerning the welfare of the children should they be returned to the mother. Further, the trial court did not abuse its discretion in denying relator's application for a writ of habeas corpus and in entering a temporary order.

The trial court had before it the witnesses and could consider their demeanor and determine their credibility as fact finder. There was little conflicting evidence. In our previous mandamus order all we instructed the trial court to do was to proceed to conduct a hearing on the application for the writ. This the trial court did. There was a full hearing.

I think the appellate court goes beyond its circumscribed and limited mandamus jurisdiction when it now proceeds to tell the trial court how to rule. Based on the evidence before it, the trial court did rule. We should uphold that ruling and not sub-

stitute our judgment for that of the trial court.

The emotional harm which might befall these two children if they are removed from the home of their father is manifest in the record. Emotional harm can have a much more detrimental effect on a person than some physical trauma such as a "fungus growth on the finger." The trial court could very well find there was imminent danger to the emotional health or well-being of these children. *See McElreath v. Stewart, supra.*

I respectfully dissent because we are usurping the role of the trial court. The petition for writ of mandamus should be denied.