David Patrick BROWN, Relator

v.

The Honorable A. Larue DIXON, III,
Judge, County Court at Law,
Cherokee County, Texas, Respondent.

No. 12–89–00105–CV.

Court of Appeals of Texas,
Tyler.

June 16, 1989.

Bill Rosenstein, Tyler, for relator.

LeRue Dixon, III, Judge, Rusk, pro se.

Dwight L. Phifer, Adamson, Phifer & Richards, Jacksonville, for respondent.

PER CURIAM.

This is an original mandamus proceeding by which Relator, the natural father and sole surviving parent of the minor child

Jennifer, seeks to compel Respondent, Judge Dixon, to vacate an order denying Relator's request for habeas corpus relief and appointing John and Judy Holcombe, the child's maternal grandparents, temporary managing conservators.

The child's mother was appointed managing conservator of the child when she and Relator were divorced in 1985. On June 3, 1988, the mother died. The child has lived with the Holcombes from the time of the mother's death and had spent a substantial amount of time with the Holcombes prior to that time. According to the testimony, after the mother's death, Mrs. Holcombe applied for and was appointed guardian of the person and estate of the child.

Sometime shortly after the mother's death,[1] Relator, a resident of Georgia, visited the child at the Holcombes' residence in Jacksonville, Texas. He again visited with her around Christmas 1988, and brought her a bicycle. There is evidence Mr. Holcombe would not allow Relator to take the child from their home at that time. Further, Mr. Holcombe presented Relator with a document of some form which Relator understood to be a relinquishment of Relator's rights to the child. Relator testified that Holcombe told him that if Relator signed the form back child support would not be sought. Relator refused to sign the form.

On February 8, 1989, Relator filed his application for a writ of habeas corpus seeking possession of the child.[2] The application alleged that Relator was the sole surviving parent of the child and that there was no court order governing possession. On February 27, 1989, an order was signed issuing the writ of habeas corpus and setting a hearing for March 17. That order was not filed until March 7, 1989. A precept to serve the order on the Holcombes and citation were issued on March 14, 1989.

The sheriff's certificate of reasonable diligence shows that three unsuccessful attempts at service on the Holcombes at their residence were made on March 14, six unsuccessful attempts were made on March 15, and one unsuccessful attempt was made on March 16. Another certificate shows additional unsuccessful attempts on the 17th and 20th of March.[3] Although at the hearing the Holcombes claimed they had not been served, the officer's return shows service without stating the time and date of service.

The hearing was rescheduled for March 20, 1989, at 1:00 p.m. by order signed on March 17, 1989. On March 20, 1989, at 12:45 p.m. the Holcombes apparently filed an "Original Answer of Respondents and Counterclaim." Appended to their response in this Court is a filemarked copy showing such filing. However, according to the affidavit of the Deputy Clerk of the trial court, the original instrument is not in the trial court's file. There is no certificate of service for the answer in the record before us.[4] The only suggestion in the record that Relator received notification of the Holcombes' original answer and counterclaim is in the prehearing argument of counsel regarding the proper scope of the hearing.

After the hearing, the trial court denied the petition for a writ of habeas corpus and appointed the Holcombes temporary managing conservators of the child. The trial court found that the child had not been in Relator's possession and control for at least six months prior to the filing of the petition, and that an action for conservatorship of the child was pending at the time of the hearing. The court further found that its orders were in the child's best interests.

Tex.Fam.Code Ann. § 14.10 governs habeas corpus proceedings to enforce rights to possession of a child. Section 14.10

---

1. The testimony varies from two to three weeks to early July.

2. Under Tex.Fam.Code Ann. § 14.10(e) (Vernon 1986) (hereinafter refered to as section 14.10).

3. The certificates show attempts in the morning, afternoon and evening. The reasons given for

the lack of service are "not home" and "no answer."

4. On March 30, 1989, the Holcombes filed an amended counterclaim on which citation was issued on that date. The citation shows delivery of the amended counterclaim to Relator on April 4, 1989, at his residence in Georgia.

overruled the prior practice in Texas by which the writ was used as a vehicle to litigate or relitigate custody. *Strobel v. Thurman*, 565 S.W.2d 238, 239 (Tex.1978). The Legislature intended to restore the writ to its common-law status as a simple and expeditious means for delivery of a child from unlawful detention. *Id.*

■ Originally, section 14.10 dealt expressly with only those cases in which custody and the right to possession were governed by a court order. In 1975, however, subsection (e) was added to provide a similar remedy when possession was not governed by a court order. Section 14.10(e) states:

> (e) If the right to possession of a child is not governed by a court order, the court in a habeas corpus proceeding involving the right of possession of the child shall compel return of the child to the relator, if, and only if, it finds that the relator has a superior right to possession of the child by virtue of the rights, privileges, duties, and powers of a parent as set forth in Section 12.04 of this code.

Section 12.04 states that unless provided otherwise by judicial order or affidavit of relinquishment, the parent of a child has the right to physical possession of the child. Tex.Fam.Code Ann. § 12.04(1) (Vernon 1986). "Parent" is defined as "the mother, a man as to whom the child is legitimate or a man who has been adjudicated to be the biological father by a court of competent jurisdiction, or an adoptive mother or father, but does not include a parent as to whom the parent-child relationship has been terminated." Tex.Fam.Code Ann. § 11.01(3) (Vernon Supp.1989). Read together, this means that as against a nonparent in the absence of a court order, a parent has a right, enforceable by the writ, to possession of his child.

■ Under certain limited circumstances, issues other than the bare right to possession may be addressed in a habeas corpus proceeding. Whether possession is governed by a court order or not, the issue of a serious immediate question as to the child's welfare may be determined. Tex. Fam.Code Ann. § 14.10(c); *Rodriguez v.*

*McFall*, 658 S.W.2d 150, 151 (Tex.1983); *McElreath v. Stewart*, 545 S.W.2d 955 (Tex.1977). Such a serious, immediate question must be one in which the child is in such imminent danger of physical or emotional harm that immediate action is necessary to protect the child. *McElreath*, 545 S.W.2d at 958; *Lundell v. Clawson*, 697 S.W.2d 836, 840 (Tex.App.—Austin 1985) (orig. proceeding).

Section 14.10(b) provides an exception to the general rule under (a) that bare proof of a prior court order entitles the applicant to possession. Under section 14.10(b), the court may consider a cross-action or motion to modify an existing order if the prior order was entered without notice and hearing, or if the child has not been in the relator's possession and control for the six months prior to filing the petition for the writ. In order to invoke this exception, there must be a prior order governing possession and a motion or cross-action to change the existing order. Section 14.10(b) assumes the existence of the court order in relator's favor and speaks to that order. *See Rankin v. Gray*, 584 S.W.2d 539, 542 (Tex.Civ.App.—Waco 1979), *rev'd on other grounds*, 594 S.W.2d 409 (Tex.1980); B. KAZEN, FAMILY LAW: TEXAS PRACTICE AND PROCEDURE § 71.02[1] (1989); *see also Strobel v. Thurman*, 565 S.W.2d 238, 239 (Tex.1978) (subsections (b)(1), (b)(2), (c), and (e) are exceptions to the general rule of section 14.10(a)).

Section 14.10(f) states an exception to the rule that in the absence of a prior court order, a parent is automatically entitled to the writ. It provides:

> (f) The court shall disregard any motion for temporary or permanent adjudication relating to the possession of the child in a habeas corpus proceeding brought under Subsection (e) of this section unless at the time of the hearing an action is pending under this subtitle, in which case the court may proceed to issue any temporary order as provided by Section 11.11 of this code.

Section 11.11 authorizes issuance of temporary orders affecting conservatorship, support, restraining orders, and attorney's

fees in "a suit affecting the parent-child relationship." In a suit affecting the parent-child relationship, each parent whose parental rights have not been terminated is entitled to service of citation. Tex.Fam. Code Ann. § 11.09(a)(7) (Vernon Supp. 1989).

In the case at hand, because of the mother's death there was no court order governing possession of the child. *Greene v. Schuble,* 654 S.W.2d 436, 438 (Tex.1983). Therefore, in the absence of a serious immediate question concerning the welfare of the child, Relator, as the sole surviving parent, was entitled to immediate, automatic possession of the child as against the Holcombes who are not parents. *Armstrong v. Reiter,* 628 S.W.2d 439 (Tex. 1982).

The Holcombes rely heavily on their counterclaim in the habeas corpus proceeding, filed minutes before the hearing on the habeas application and handed to Relator's counsel at the proverbial courthouse door, to provide the authority for the trial court to deny the writ and enter the temporary orders governing possession. The counterclaim states, in effect, an original suit affecting the parent-child relationship (hereinafter "SAPCR"). We, however, are not persuaded that they have established any exception to the requirements for issuance of the writ.

First, the Holcombes rely on section 14.10(b)(2) as permitting consideration of their counterclaim at the habeas hearing because the child had been in their possession for more than six months prior to Relator's filing. As discussed above, 14.10(b) is an exception to 14.10(a) and assumes the existence of a prior order. There is no prior order in this case. Thus, section 14.10(b)(2) does not apply.

Second, the trial court did not find any serious, immediate question concerning the child's welfare. The order itself recites that it is based upon a "pending action" and the best interests of the child. There was no evidence proving the sort of dire emergency contemplated by the serious, immediate question exception to the trial court's automatic ministerial duty to order the child turned over to the Relator. The subjective belief of the Holcombes and their witnesses that the child was better off with them and would be emotionally upset if made to go with Relator does not raise the existence of an unexpected crisis or dire emergency demanding immediate action to protect the child. *See Lundell v. Clawson,* 697 S.W.2d 836, 840 (Tex.App.— Austin 1985) (orig. proceeding); *Cowan v. Lindsey,* 683 S.W.2d 55, 57 (Tex.App.—Tyler 1984) (orig. proceeding); *Grimes v. Flores,* 717 S.W.2d 949, 952 (Tex.App.—San Antonio 1986) (orig. proceeding).

Moreover, we do not find that at the time of the hearing there was pending any suit affecting the parent-child relationship so as to authorize the trial court to issue temporary orders pursuant to 14.10(f).

The Holcombes urge that their counterclaim seeking temporary and permanent conservatorship of the child is such an action and, therefore, the trial court was authorized to deny the writ and enter the temporary orders. They contend that service on Relator's counsel was proper under Tex.R.Civ.P. 21a, and Relator waived his right to twenty days notice by announcing ready at the opening of the hearing on March 20, 1989. We cannot agree.

We conclude that the Relator was not amenable to service of the Holcombes' counterclaim. Section 14.10(d) provides:

(d) While in this state for the sole purpose of compelling the return of a child through a habeas corpus proceeding, the relator is not amenable to civil process and is not subject to the jurisdiction of any civil court except the court in which the writ is pending and in that court only for the purpose of prosecuting the writ.

In *Marshall v. Wilson,* 616 S.W.2d 932 (Tex.1981), our Supreme Court explained the impact of 14.10(d) as follows:

Spelled out, Section 14.10(d) means that when William Pacheco goes to Tennessee and kidnaps a child, and the managing conservator follows the child to Texas, she may institute a habeas corpus proceeding at which she will win by mere proof that she has an order making her

the managing conservator. While she is in Johnson County or elsewhere in Texas seeking to compel the return of the child, she may not be served with civil process. Moreover, she is not subject to the jurisdiction of any civil court except the court in which the writ of habeas corpus is pending. She is subject to the jurisdiction of that court *only for the purpose of prosecuting the writ of habeas corpus.* (Emphasis ours.)

The interpretation of the statute in *Marshall* precludes service upon Relator of any original suit seeking litigation or relitigation of custody on "the best interests of child standard," when he is in Texas to prosecute a writ under section 14.10, no matter what it is titled or has as its subject matter. It would eviscerate the statute to allow litigation of custody upon the mere filing, on the way into the habeas hearing, of what is an original SAPCR disguised by the title of "counterclaim." This we will not do.

■ We also find the Holcombes' waiver argument to be without merit. The record reflects that the court announced the cause as "Cause No. 89–2–74, Ex Parte: Jennifer Brown" upon which Relator and the Holcombes announced ready. Immediately thereafter, counsel for Relator stated his objections to proceeding on any matter other than Relator's immediate right to possession of the child. He specifically relied upon 14.10(d), his right to advance notice of any hearing under section 11.11, and the lack of citation in the Holcombes' previously filed SAPCR. Given the timing of the Relator's objection and the circumstances of the alleged service of the Holcombes' counterclaim, we find no waiver of the objections to the scope of the hearing.

In summary, the record before us shows that Relator, a resident of Georgia, is the sole surviving parent of the child and that there are no orders in existence governing the right to possession of the child. At the time of the hearing on his application for a writ of habeas corpus, there was no pending suit affecting the parent-child relationship in which proper notice had been given to Relator. Therefore, the result of Rela-

tor's application should have been the delivery of the child to him. Upon his showing that he was the child's parent and that no court order existed governing possession, the issuance of the writ should have been immediate, automatic, and ministerial. *Rodriguez v. McFall,* 658 S.W.2d 150, 151 (Tex.1983); *Armstrong v. Reiter,* 628 S.W.2d 439, 440 (Tex.1982).

The trial court's failure to fulfill its mandatory, ministerial duty is remediable by writ of mandamus. *See Nydegger v. Breig,* 740 S.W.2d 551, 552 (Tex.App.—San Antonio 1987, no writ). Relator was entitled to the writ of habeas corpus. We conditionally grant the writ of mandamus.

We assume Judge Dixon will promptly vacate his order denying the writ and entering temporary orders and will forthwith grant the relief sought by Relator. Our writ of mandamus will issue only if he declines to do so within fifteen (15) days of this opinion.