Petition for Writ of Mandamus Conditionally Granted, in Part, and
Denied, in Part, and Opinion filed December 16, 2008








 

Petition
for Writ of Mandamus Conditionally Granted, in Part, and Denied, in Part, and
Opinion filed December 16, 2008.

 

 

In The

 

Fourteenth Court of
Appeals

____________

 

NO. 14-08-00957-CV

____________

 

IN RE DAVID M. BRADSHAW, Relators

 

 



 

ORIGINAL
PROCEEDING

WRIT OF MANDAMUS

 



 

O P I N I
O N

On
October 16, 2008, relator, David M. Bradshaw, filed a petition for writ of
mandamus.  See Tex. Gov=t Code Ann. ' 22.221 (Vernon 2004); see also Tex. R. App. P. 52. 
Bradshaw requests that we compel the Honorable Frank Rynd, presiding judge of
the 309th District Court of Harris County, to vacate his September 10, 2008
order, which denies Bradshaw=s petition for writ of habeas corpus for the immediate
possession of the child, C.S.B., pursuant to a valid custody order, and grant
the same.  We conditionally grant the petition, in part, and deny it, in part. 


                                                                                                                                    Background

Bradshaw
and real party in interest, Sherah Juarez, were divorced in Tennessee in 1996. 
Bradshaw and Juarez were appointed joint managing conservators of the children,
L.H.B., currently age 14, and C.S.B.,currently age 16, with Bradshaw having the
right to determine the primary residence of the children.[1] 
On December 27, 1996, a district court in Oklahoma modified the joint custody
plan, and found that it was in the best interests of the children to appoint
Bradshaw sole managing conservator and Juarez possessory conservator.  L.H.B.
and C.S.B. have been living with Bradshaw in Virginia.  On June 16, 2008,
Juarez took possession of C.S.B. and L.H.B for summer visitation in Houston. 
On August 9, 2008, L.H.B. was returned to Bradshaw in Virginia, but C.S.B. was
not.  On August 20, 2008, Bradshaw arrived at Juarez=s home with the Harris County Sheriff=s Department in an attempt to
retrieve C.S.B., but Juarez refused to release the child.  

On
August 21, 2008, Juarez filed an original petition in a suit affecting the
parent-child relationship, in which she sought to modify the Oklahoma order and
be awarded the right to designate the primary residence of C.S.B.  That same
day, Associate Judge Meca Walker signed a temporary order (1) prohibiting
Bradshaw from having any contact with C.S.B. until a hearing was held, (2)
directing that C.S.B. remain in Juarez=s possession, and (3) setting a
hearing for September 3, 2008.  

On
August 25, 2008, Bradshaw filed a petition for writ of habeas corpus for the
return of C.S.B. to his possession.  That same day, Judge Rynd signed an order
for a writ of attachment and an order for the issuance of a writ of habeas
corpus for C.S.B., directing that C.S.B. be produced at the court at 9:00 a.m.,
on September 2, 2008.  








On
August 26, 2008, Harris County deputies executed the writ of attachment and
brought C.S.B. to the 309th District Court.  Associate Judge Michael Hay
conducted a hearing and interviewed C.S.B., orally granted the writ of habeas
corpus, rescinded the August 21, 2008 temporary restraining order, and awarded
Bradshaw $1,500 in attorney=s fees.  Judge Judy Warne signed the order directing Juarez
to return C.S.B. and awarding Bradshaw $1,500 in attorney=s fees.  

C.S.B.
was to leave with Bradshaw after the August 26, 2008 hearing.  Instead, C.S.B.
ran from the courthouse.  C.S.B. called Juarez from a restaurant.  Juarez and
her husband drove the restaurant and took C.S.B. to their home.  Juarez called
Bradshaw to say he could retrieve C.S.B. at her home: however, when Bradshaw arrived
C.S.B. refused to get in the car and leave with him.  After C.S.B. and Bradshaw
talked in the driveway of Juarez=s home for about two hours, C.S.B.
walked away from Bradshaw to the home of a friend in the neighborhood.  C.S.B.
returned to Juarez=s home at 1:00 a.m.

On
August 27, 2008, Bradshaw requested a second writ of attachment for C.S.B., and
Judge Hay held a hearing.  Judge Hay commented that if he granted another writ of
attachment, C.S.B. would run away again, and denied Bradshaw=s request.  On August 29, 2008, Judge
Rynd signed an order appointing an amicus attorney for C.S.B.  

On
September 2, 2008, Bradshaw, his counsel, and amicus counsel appeared for a
hearing before Judge Rynd on the habeas corpus.  However, Juarez, her counsel,
and C.S.B. failed to appear.  Judge Rynd signed a writ of attachment for the
amicus attorney to execute the following day.  








On September
3, 2008, Judge Rynd held a hearing, at which all parties, including C.S.B.,
were present.  Judge Rynd ruled that service was not achieved on Bradshaw in
Juarez=s suit affecting the parent-child
relationship because Bradshaw had immunity to civil process while in Texas on a
habeas proceeding to have C.S.B. returned to him.[2] 
With respect to the habeas corpus, Judge Rynd, prior to any testimony, ruled
that he was rescinding the August 26, 2008 writ of habeas corpus granted by
Judge Hay.  Judge Rynd then allowed the parties to put on testimony by
Bradshaw, Juarez, and C.S.B.  After the testimony, Judge Rynd changed his prior
ruling, explaining that AI feel like my hands are tied by the law@ and announcing that he was granting
the writ of habeas corpus.  Judge Rynd suggested that Juarez seek legal counsel
in Virginia to modify the custody order.  Judge Rynd returned to his chambers
with the amicus attorney and informed C.S.B. that he would  be returning to
Virginia with Bradshaw.  

Judge
Rynd then returned to the courtroom Ato reopen the hearing@ because C.S.B. had an Aemotional outburst@ when Judge Rynd told him that he
would be returning to Virginia with Bradshaw.  After further testimony by
C.S.B. and Juarez, Judge Rynd denied the writ of habeas corpus.  On September
10, 2008, Judge Rynd signed an order denying Bradshaw=s petition for a writ of habeas
corpus, directing that Juarez maintain sole and exclusive possession of C.S.B.,
pending further orders of the court, and directing that Bradshaw be allowed to
maintain reasonable phone access to C.S.B.  Bradshaw brings this original
proceeding to compel Judge Rynd to vacate his September 10, 2008 order denying
his petition for writ of habeas corpus, and grant the same.  

Standard
of Review








Mandamus
is proper to compel enforcement of a relator=s right to custody.  Hui-Mei Wise
v. Yates, 639 S.W.2d 460, 461 (Tex. 1982) (orig. proceeding) (per curiam); Forbes
v. Wettman, 598 S.W.2d 231, 232 (Tex. 1980) (orig. proceeding).  A trial
court clearly abuses its discretion if it reaches a decision so arbitrary and
unreasonable as to amount to a clear and prejudicial error of law.  Walker
v. Packer, 827 S.W.2d 833, 839 (Tex. 1992) (orig. proceeding).  

Relevant
Habeas Corpus Law

Under
Section 157.372(a) of the Texas Family Code,  

[I]f the right to possession of a
child is governed by a court order, the court in a habeas corpus proceeding
involving the right to possession of the child shall compel return of the child
to the relator only if the court finds that the relator is entitled to
possession under the order.

Tex. Fam. Code Ann. ' 157.372(a) (Vernon 2002).  Section
157.372(a) requires the trial court to grant a writ of habeas corpus if it
finds that a court order entitles the relator to possession.  Forbes,
598 S.W.2d at 232.  The issuance of the writ should be automatic, immediate,
and ministerial.  Greene v. Schuble, 654 S.W.2d 436, 438 (Tex. 1982)
(orig. proceeding).  








The
trial court, however, may enter temporary orders if it finds that there is a
serious immediate question concerning the welfare of the child as provided in
Section 157.374 of the Texas Family Code.  Tex. Fam. Code Ann. ' 157.374 (Vernon 2002); Hui-Mei
Wise, 639 S.W.2d at 461; Forbes, 598 S.W.2d at 232.[3] 
The degree of seriousness that would justify disregarding a court=s custody order is Aa child who [is] in such imminent
danger of physical or emotional harm that immediate action [is] necessary to
protect the child.@  Strobel v. Thurman, 565 S.W.2d 238, 240 (Tex. 1978)
(orig. proceeding) (citing McElreath v. Stewart, 545 S.W.2d 955, 958
(Tex. 1977) (orig. proceeding)).  In the absence of an exception thereto,
section 157.372 imposes a mandatory duty upon the trial court to grant a writ
of habeas corpus.  Armstrong v. Reiter, 628 S.W.2d 439, 440 (Tex. 1982)
(orig. proceeding).  

Serious
Immediate Question Pertaining to the Welfare of the Child

In his
first issue, Bradshaw contends that Judge Rynd abused his discretion by
refusing to order Juarez to return C.S.B. to Bradshaw after the specific
finding by Judge Hay that there was not an immediate serious question regarding
the welfare of C.S.B. and the issuance of the August 26, 2008 writ of habeas
corpus.  Bradshaw argues the trial court cannot justify its refusal to enforce
a valid custody order once a specific finding was made that C.S.B. was not in
immediate harm or danger.  

In his
second issue, Bradshaw asserts that Judge Rynd abused his discretion by
refusing to grant the writ of habeas corpus simply because Juarez and her
counsel failed to appear at the September 2, 2008 hearing with C.S.B. after
being duly noticed.  Bradshaw argues that Judge Rynd was first required to hear
evidence raising a question concerning the serious and immediate welfare, or
order the return of C.S.B. based on the valid registered custody order.  

Bradshaw=s contentions are without merit.  As
set forth above, after the August 26, 2008 hearing conducted by Judge Hay,
C.S.B. took off by himself in downtown Houston.  Later, that evening, C.S.B.
refused to leave Juarez=s house with Bradshaw and left by himself, going to a friend=s house.  On August 27, 2008, Judge
Hay refused to issue a second writ of attachment because he believed C.S.B.
would run away again.  In light of these changed circumstances, Judge Rynd did
not abuse his discretion by refusing to order Juarez to return C.S.B. to
Bradshaw or to grant the writ of habeas corpus at the September 2, 2008
hearing.  Bradshaw=s first and second issues are overruled.  








In his
fourth issue, Bradshaw asserts that Judge Rynd abused his discretion when he
entered emergency temporary orders giving Juarez the right to determine C.S.B.=s primary residence and excluding Bradshaw
from possession or access when there was no evidence raising a serious and
immediate question concerning C.S.B.=s welfare.  Prior to any testimony at
the September 3, 2008 hearing, Judge Rynd ruled that he was rescinding the writ
previously granted by Judge Hay, and signed by Judge Warne, primarily because
C.S.B. had run away twice.  At that point, Judge Rynd agreed to allow the
parties to put on witnesses.  

Juarez
testified that, a couple of weeks before C.S.B. was to return to Virginia,
C.S.B., who Awas crying and very emotional,@ told Juarez about circumstances in
Bradshaw=s home of which she was not aware. 
C.S.B. was very adamant about not getting on the plane to return to Virginia
and threatened to run away.  Juarez testified that C.S.B. will run away again
if the court orders C.S.B. to return to Virginia, and there will no one there
to help him.  

C.S.B.
testified that he had lived with his father for sixteen years and wanted to
spend two years with his mother to build a relationship.  C.S.B. called
Bradshaw and told him that he wanted to live with Juarez.  Bradshaw did not
give him an answer, but told him he needed to come home and they could talk
about it.  Two years before these events, C.S.B. told Bradshaw that he wanted
to live with his mother.  Bradshaw and his wife told C.S.B. they were hurt
because of his rejection.  

C.S.B.
explained that Bradshaw is a good parent until it comes to C.S.B.=s having a relationship with his
mother, and his relationship with Juarez is on Bradshaw=s terms.  C.S.B. thinks Bradshaw has
tried to replace Juarez with his stepmother.  Bradshaw does not tell C.S.B.
that he cannot refer to his mother as Amom,@ but he makes him feeling guilty for
doing so.  C.S.B. has always had to call his stepmother Amom,@ although Bradshaw  disputed this.  








C.S.B.
testified that Bradshaw will not allow him to call Juarez on his cell phone,
but talks to Juarez once or twice a month from the home phone.  Juarez stated
that she talks to the children once every ten to fourteen days.  When she tries
to call the children, either there is no response or they do not return her
calls.  Bradshaw stated that he has never prevented C.S.B. from having
telephone conversations with Juarez, but allows C.S.B. to communicate freely
with Juarez.  However, Bradshaw admitted that at Asome point@ conversations between the children
and Juarez were being tape recorded.  

C.S.B.
stated that when he returns to Virginia after visiting Juarez, he cannot find
his photographs of Juarez.  C.S.B. has had photographs of his mother on his
desk, but they do not remain there.  C.S.B. testified that he is scared to ask
Bradshaw why he cannot have pictures of his mother in his room.  Bradshaw
testified that he has never taken C.S.B.=s photographs of Juarez from him. 

C.S.B.
recited an incident when Bradshaw and Juarez were having an argument regarding
his sister.  Bradshaw Aripped [C.S.B.] our of [his] bed.@  C.S.B. got in trouble for defending
Juarez and Bradshaw made him tell Juarez on the phone that she was wrong. 
Bradshaw stated that he has never grabbed C.S.B. when they had a disagreement
over Juarez, and he has never punished C.S.B. for taking Juarez=s side.  








C.S.B.
also described the events that occurred on the evening of August 26, 2008, when
Bradshaw attempted to retrieve C.S.B.  Bradshaw and one of his attorneys went
to Juarez=s home to pick up C.S.B. so that they could return to Virginia.  C.S.B.
refused to leave with Bradshaw, and sat in the car with his feet hanging
outside of the car so the door could not be closed.  C.S.B. testified that
Bradshaw tried to put him in the car, and there was a physical struggle between
them.  C.S.B. told Bradshaw he was not getting in the car and asked Bradshaw if
he was going to physically force him into the car.  According to C.S.B.,
Bradshaw=s attorney started yelling at
Bradshaw to stop touching C.S.B.  C.S.B. testified that Bradshaw=s attorney told him he could go to Ajuvi@ or his mother could go to jail and Athat=ll be put on you.@  Juarez testified Bradshaw=s attorney told C.S.B. that she was
going to report to the judge that Juarez was harboring a child and, because he
ran away, the judge would order two police officers to physically put him on a
plane to Virginia.  

Bradshaw
testified that he did not grab C.S.B., but only wanted to move his feet out of
the way.  Bradshaw stated that his attorney did not tell him to take his hands
off C.S.B.  Bradshaw testified that no one told C.S.B. the police would be
called if he did not return to Bradshaw or that Juarez would be arrested.  

After
Bradshaw tried to physically put him in the car, C.S.B. stated that he does not
know what to expect from Bradshaw if he returns to Virginia.  If he were
ordered to return to Virginia, C.S.B. would Afind a way to come right back here. .
. . I would find a way to come back to my mom.  If that means running way [sic]
again, I guess, I=d have to do that.@  He understands that is could be
very dangerous for a boy his age and size to travel alone from Virginia to
Texas.  C.S.B. stated that, except for trying to put him in the car, Bradshaw
has never physically laid his hands on him. Bradshaw testified that he has
never physically abused C.S.B. and Juarez has never conveyed to him that he has
been emotionally abusive to C.S.B.  

When
Judge Rynd reopened the hearing after C.S.B.=s emotional outburst, C.S.B.
testified that Asecrets@ were revealed during the hearing for which he is afraid of
reprisals, i.e., that Bradshaw takes away C.S.B.=s pictures of Juarez and listens to
phone conversations between C.S.B. and Juarez.  C.S.B. testified that Bradshaw
has recorded telephone conversations between him and his mother in the past,
and that he has caught his stepmother listening in on his conversations with
Juarez.  Juarez testified that C.S.B. is very reserved and uncomfortable when
he is on the phone with her, and has no communication with C.S.B. when he is
away from the house.  








C.S.B.
testified that Bradshaw will not allow him to have a relationship with Juarez
and he needs his mother in his life.  C.S.B. explained that his friends are
under the impression that Bradshaw=s wife is C.S.B.=s biological mother.  

C.S.B.
testified that he has been Abeaten down emotionally.@  If he has to return with Bradshaw,
C.S.B. thinks he could be physically harmed, and the emotional treatment from
Bradshaw could worsen.  C.S.B. admitted that there has not been any physical
violence in the past, but after Bradshaw tried to force him into the car when
he told him he was not returning to Virginia, C.S.B. fears that it is starting
to become physical and he is scared it could go further.  

After
Judge Rynd reopened the hearing and allowed further testimony by C.S.B. and
Juarez, he denied the writ of habeas corpus and entered temporary orders based
on his finding that there is a serious immediate question concerning the
welfare of C.S.B. because he already had run away twice, and that C.S.B. was
likely to run away again.  Judge Rynd further stated that his emotional health
is in danger because of the hostility toward Juarez in Bradshaw=s home.








The fact
that a child prefers to be with one parent over the other is not sufficient to
support a finding that there is an immediate serious question concerning the
child=s welfare.[4] 
The fact that a child has merely threatened to run away is not
sufficient to support a finding that there is an immediate serious question
concerning the child=s welfare.  Strobel, 565 S.W.2d at 239B40 (father=s suggestion that there may be
serious question concerning welfare of child because of threat to run away did
not show any serious immediacy to disregard Indiana decree).  However, here,
the fact that C.S.B. had already  run away  twice was a significant
factor in Judge Rynd=s denial of the writ of habeas corpus.  C.S.B. testified that
he would find a way to return to Juarez in Texas.  Given the fact that C.S.B.
had already run away twice, with one occasion in downtown Houston, where he was
in completely unfamiliar surroundings, supports Judge Rynd=s finding that C.S.B. is likely to
run away again.  Moreover, Judge Rynd observed C.S.B.=s testimony and C.S.B.=s Aemotional outburst@ when he was told that he would have
to return to Virginia with Bradshaw.  We will not second guess Judge Rynd=s observations of C.S.B.  We find
that the evidence supports Judge Rynd=s finding that a serious immediate
question regarding the welfare of C.S.B. exists.  Bradshaw=s fourth issue is overruled. 

In his
third issue, Bradshaw argues that Judge Rynd abused his discretion when, he
rescinded the writ granted on August 26, 2008, because the ruling was based on
the Abest interest of the child standard.@  The trial court may not deny a writ
of habeas corpus on the basis of the best interests of the child.  Schoenfeld
v. Onion, 647 S.W.2d 954, 955 (Tex. 1983) (orig. proceeding) (per curiam). 
As discussed above, Judge Rynd initially rescinded the August 26, 2008 writ of
habeas corpus at the beginning of the September 3, 2008 hearing, stating AI believe it=s not in the best interest of the
child to have the writ of habeas corpus issued.@  However, Judge Rynd=s final ruling, at the September 3,
2008 hearing, denied the writ on the finding that Athere is a serious, immediate
question concerning the welfare of the child.@  Bradshaw=s third issue is overruled.  

Temporary
Orders








In his
fifth issue, Bradshaw argues that Judge Rynd abused his discretion when he
granted emergency temporary orders giving Juarez the right to determine C.S.B.=s primary residence for an indefinite
period and excluding Bradshaw from possession and access to C.S.B.  Juarez
responds that Judge Rynd wanted to give the court in Virginia time to address
the custody issue.  The portion of the September 10, 2008 order, relevant to
this issue, states:

Additionally, in accordance with ' 157.374 of the Texas Family Code,
the Court finds that a serious and immediate question exists as to the welfare
of the child based on the actions of the father, DAVID BRADSHAW[,] and orders
that the mother, SHERAH JUAREZ[,] shall maintain sole and exclusive
possession of this child pending further orders by the Court.  The [f]ather,
DAVID BRADSHAW[,] shall be allowed to maintain reasonable phone access to the
child while this matter is pending.[5]

The
hearing for the enforcement of the order for custody is not a readjudication of
custody.  Black v. Onion, 694 S.W.2d 52, 55 (Tex. App.CSan Antonio 1985, orig. proceeding). 
Therefore, a temporary order should not be a final adjudication of custody.  In
re Lau, 89 S.W.3d 757, 759 (Tex. App.CHouston [1st Dist.] 2002, orig.
proceeding). Here, there is no date specified for the termination of Juarez=s custody of C.S.B. or a date set for
another hearing on the matter.  Therefore, this order is not Atemporary.@  See id. (holding that
temporary order completely transferred custody without setting further hearing,
writ action was fully terminated, and final adjudication of custody was affected);
Grimes v. Flores, 717 S.W.2d 949, 952 (Tex. App.CSan Antonio 1986, orig. proceeding)
(holding that Atemporary@ order amounted to order modifying custody of children
because language changed custody for an indefinite period); Young v.
Martinez, 685 S.W.2d 361, 363 (Tex. App.CSan Antonio 1984, orig. proceeding)
(finding that habeas corpus application was used inappropriately to decide
final custody where later hearing was not contemplated).  

Moreover,
the order does not provide Bradshaw with any visitation with, or access to,
C.S.B., and is an improper denial of Bradshaw=s right to visitation with C.S.B.  See
In re Lau, 89 S.W.3d at 759B60 (holding order improperly denied relator=s right to visitation with his
child).  Accordingly, Bradshaw=s fifth issue is sustained.  








Payment of
Amicus Attorney=s Fees

In his
sixth issue, Bradshaw asserts that Judge Rynd abused his discretion, when on
August 29, 2008, he appointed an amicus attorney and ordered Bradshaw and
Juarez each to deposit $500.00 in the amicus attorney=s trust account.[6] 
Bradshaw maintains that, because purpose of the amicus attorney is to assist
the trial court in determining the Abest interest of the child@ and the Abest interest of the child@ standard is not applicable to a
habeas corpus proceeding, the trial court has erroneously ordered Bradshaw to
pay the amicus attorney=s legal fees.  

The
Texas Family Code defines Aamicus attorney@ as Aan attorney appointed by the court in
a suit, other than a suit filed by a governmental entity, whose role is to
provide legal services necessary to assist the court in protecting a child=s best interests rather than to provide legal
services to the child.@  Tex. Fam. Code Ann. ' 107.001(a) (Vernon Supp. 2008)
(emphasis added).  The Family Code provides for the appointment of an amicus
attorney in a suit affecting the parent-child relationship to advocate the best
interests of the child.  See Tex. Fam. Code Ann. ' 107.005(a) (Vernon Supp. 2008)
(stating that, in a suit affecting the parent-child relationship, Aan amicus attorney shall advocate the
best interests of the child after reviewing the facts and circumstances
of the case@) (emphasis added).[7] 








We do
not find, and the parties do not cite, any provision allowing appointment of an
amicus attorney in a habeas corpus proceeding.  Indeed, the trial court may not
deny a writ of habeas corpus on the basis of the best interests of the child.  Schoenfeld,
647 S.W.2d at 955; see also McElreath, 545 S.W.2d at 957 (A[W]here there is a valid existing
judgment of child custody, the issues of best interests of child and right of
possession should not be relitigated.@).  

On
August 21, 2008, Juarez filed an original petition in a suit affecting the
parent-child relationship, in which she sought to modify the Oklahoma custody
order and be awarded the right to designate the primary residence of C.S.B.  On
that same day, Associate Judge Meca Walker signed a temporary order (1)
prohibiting Bradshaw from having any contact with C.S.B. until a hearing was
held, (2) directing that C.S.B. remain in Juarez=s possession, and (3) setting a
hearing for September 3, 2008.  On August 29, 2008, the Judge Rynd appointed
the amicus attorney.  The trial court=s order states that an amicus
attorney should be Aappointed to provide legal services to assist the Court in protecting
the interest of the minor child(ren),@ and A[t]he Amicus Attorney shall only be
required to attend court hearings where his or her presence is necessary to protect
the best interest of the child(ren).@[8] 

At the
time Judge Rynd appointed the amicus attorney, Juarez=s original petition in a suit
affecting the parent-child relationship was pending.  It was not until the
September 3, 2008 hearing that Judge Rynd ruled service of Juarez=s petition was not achieved on
Bradshaw.  Therefore, Judge Rynd did not abuse his discretion when he initially
appointed the amicus attorney and ordered Bradshaw to pay $500.00 into the
amicus attorney=s trust account.  See Tex. Fam. Code Ann. ' 107.005(a).  The record reflects
that the amicus attorney, up to that point, only had appeared at the September
2, 2008 hearing when Judge Rynd issued the writ of attachment for the amicus
attorney to bring C.S.B. to the court the next day.  








However,
after Judge Rynd ruled, at the September 3, 2008 hearing, that service was not
achieved on Bradshaw, the trial court then focused on the petition for writ of
habeas corpus.  At this point, because the Abest interest of the child@ standard is not applicable to a
habeas proceeding, there should have been no need for continued participation
of the amicus attorney.  The record shows that when Judge Rynd granted the
parties= request to present testimony, the
amicus attorney questioned C.S.B. on direct examination and cross-examined
Bradshaw and Juarez.  When Judge Rynd reopened the hearing, he specifically
requested that the amicus attorney Aplease asks some questions that will
give me the whole truth.@  The amicus attorney again questioned C.S.B. on direct
examination and cross-examined Juarez. 

Because
the best interests of the child standard is not applicable to a habeas corpus
proceeding, we conclude that Judge Rynd abused his discretion in directing
further participation of the amicus attorney during the hearing on the petition
for a writ of habeas corpus.  Therefore, we hold the trial court abused its
discretion by ordering Bradshaw to pay attorney=s fees for any work the amicus
attorney performed relative to the habeas corpus matter.[9] 
Bradshaw=s sixth issue is sustained.[10] 


Relator=s Attorney=s Fees

In his
seventh issue, Bradshaw contends that Judge Rynd abused his discretion in
failing to grant any fees, costs, or expenses related to the prosecution of the
petition for a writ of habeas corpus.  During the August 26, 2008 habeas
proceeding, Judge Hay awarded Bradshaw $1,500 in attorney=s fees, which Bradshaw contends is
only a partial amount of what he requested.  As discussed above, because Judge
Rynd did not abuse his discretion in rescinding Judge Hay=s August 26, 2008 ruling, he did not
abuse his discretion by refusing to awarding attorney=s fees to Bradshaw after the petition
for a writ of habeas corpus was denied.  Bradshaw=s seventh issue is overruled.             








Conclusion

The
September 10, 2008 temporary orders inappropriately modify the 1996 Oklahoma
custody order.  We further conclude that the trial court abused its discretion
by ordering Bradshaw to pay the amicus attorney for any work performed
pertaining to the habeas corpus matter.  We also hold that Judge Rynd did not
abuse his discretion by denying Bradshaw=s petition for a writ of habeas
corpus and request for attorney fees related to prosecution of the petition. 
Accordingly, we conditionally grant Bradshaw=s petition for writ of mandamus, in
part, and direct the trial court to modify its September 10, 2008 order
consistent with this opinion, and direct that Bradshaw is not responsible for
amicus attorney fees for work performed in connection with the habeas corpus
matter.  We deny Bradshaw=s petition, in part, with regard to denial of his petition
for a writ of habeas corpus and his request for attorney=s fees.  The writ will issue only if
the trial court fails to act in accordance with this opinion.  

/s/        Charles Seymore

Justice

 

 

Petition
Conditionally Granted, in Part, and Denied, in Part, and Opinion filed December
16, 2008.

Panel
consists of Justices Yates, Seymore, and Boyce. 









[1]  C.S.B. will turn 17 in January 2009.  





[2]  See Tex. Fam. Code Ann. ' 157.375 (Vernon 2002) (providing relator is not
amenable to civil process while in Texas for sole purpose of compelling return
of child through habeas corpus proceeding); Marshall v. Wilson, 616
S.W.2d 932, 934 (Tex. 1981) (holding that managing conservator, while in Texas
to seek return of child by writ of habeas corpus, may not be served with civil
process and is subject to jurisdiction of court in which habeas corpus is
pending and only for purpose of prosecuting writ of habeas corpus).  





[3]  Section 157.374 of the Texas Family Code states:

 

Notwithstanding any other provision of this
subchapter, the court may render an appropriate temporary order if there is a
serious immediate question concerning the welfare of the child.

 

Tex. Fam. Code Ann. ' 157.374.  





[4]  See Brown v. Dixon, 776 S.W.2d 599, 602 (Tex.
App.CTyler 1989, orig. proceeding) (holding subjective
belief of maternal grandparents and their witnesses that child was better off
with them and would be emotionally upset if made to go with father did not
raise existence of unexpected crises or dire emergency demanding immediate
action to protect child); Lundell v. Clawson, 697 S.W.2d 836, 840 (Tex.
App.CAustin 1985, orig. proceeding) (AAnd it appears from the record that the trial court
denied [relator=s] petition for habeas corpus chiefly for the
non-critical ground that the child himself desired to remain with his mother.@); Klein v. Cain, 676 S.W.2d 165, 172 (Tex.
App.CAmarillo 1984, orig. proceeding) (factual findings,
which evinced, at most, child=s emotional
well-being was better served by not changing home and lifestyle, fell far short
of circumstances of immediacy and seriousness required by statute to authorize
temporary orders).  





[5]  Emphasis added.  





[6]  The September 10, 2008 order denying Bradshaw=s petition for writ of habeas corpus does not direct
any additional payments to the amicus attorney.  





[7]  The trial court may further appoint amicus attorneys
in certain other suits in which the best interests of the child are at issue.  See
Tex. Fam. Code Ann. ' 107.021(a)(1) (Vernon Supp. 2008) (providing that
trial court may appoint an amicus attorney in Aa suit in which the best interests of a child are at issue,
other than a suit filed by a governmental entity requesting termination of the
parent‑child relationship or appointment of the entity as conservator of
the child@) (emphasis added).  





[8]  Emphasis added.





[9]  Juarez has never challenged the appointment of the
amicus attorney or the payment of her fees.





[10]  The August 29, 2008 order appointing the amicus
attorney directed that the parties each were to deposit $500.00 in the amicus
attorney=s trust account Ano
later than 5:00 p.m., seven (7) days following the signing of this Order.@  There is nothing in the record to indicate whether
Bradshaw deposited the $500.00.